Filed 10/2/13  In re Noah A. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re NOAH A. et al., Persons Coming Under the Juvenile Court Law. | D063812 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. ROBERT A., Defendant and Appellant. | (Super. Ct. No. EJ3500A-B) |

APPEAL from orders of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Affirmed.

Rosemary Bishop, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Dana C. Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

Neil R. Trop, under appointment by the Court of Appeal, for Minors.

Robert A. appeals the juvenile court's orders refusing to return his daughter, K.A., to his custody and maintaining dependency jurisdiction of his son, Noah A., at the 12-month review hearing. (Welf. & Inst. Code, § 366.21, subd. (f).)[1] Robert contends the court's orders were not supported by substantial evidence. We affirm.

## FACTUAL BACKGROUND

In October 2011, the San Diego County Health and Human Services Agency (Agency) learned K.A., then two years old, had made statements to her mother, L.A., and her maternal grandmother suggesting Robert had molested her (digital and penile penetration). K.A. repeated similar statements to police and physicians who investigated. A physical examination found "[s]exual abuse [was] suspected but indeterminate." In November, L.A. tested positive for marijuana and, in December, she tested positive for amphetamine and methamphetamine as well. L.A. also did not appear at a hearing to obtain a restraining order.[2] On December 22, family court services granted Robert temporary custody of the children.

In January 2012, the Agency filed dependency petitions on behalf of Noah, then four years old, and K.A. Both petitions alleged under section 300, subdivision (b) that L.A. was unable to provide regular care because she had abused drugs and had failed to

---

[1] Statutory references are to the Welfare and Institutions Code.

[2] Robert and L.A. were married for five years; their divorce became final in November 2012. Because L.A. is not a party in this appeal, we shall only refer to her as relevant to issues presented in Robert's appeal and to provide background.

2

seek custody or a protective order following the sexual abuse allegations. K.A.'s petition also contained an allegation that Robert had sexually abused her. (§ 300, subd. (d).) The children were detained in a foster home.

Robert denied sexually abusing K.A. and said the maternal grandmother may have coached K.A. In March, the foster parent said she could no longer care for the children; Agency subsequently detained them with the maternal grandmother after her home was approved.

At the contested jurisdictional/dispositional hearing on May 14, the parties announced they had settled the jurisdiction issue. The court granted Agency's request to dismiss the section 300, subdivision (d) allegation in K.A.'s petition and add a second allegation under subdivision (b) of the statute. The new allegation, which the parties stipulated, stated a cause of action, recited K.A.'s various statements that suggested sexual abuse by Robert as causing or creating the risk of serious harm to her; however, it did not allege that Robert sexually abused K.A.[3] Agency also amended the original subdivision (b) allegation (contained in Noah's and K.A's petitions) to delete language

---

[3]    The new section 300, subdivision (b) allegation read:  "The child has suffered, or there is substantial risk the child will suffer, serious physical or emotional harm or illness in that:  From July 13, 2011 to December 15, 2011, the child made the following statements to the following persons:  to the maternal grandmother on [July 13, 2011], "Daddy go pee pee in my butt;" to the maternal grandmother on [October 17, 20]11, "This hurts," and "Daddy put his penis in there," while pointing to her vaginal area; to her mother on [October 28, 20]11, "My area (the child's name for her vaginal area) hurts. Daddy put his penis in my area.  It hurts;" to her father on [October 28, 20]11, "Daddy you put your penis in me;" to La Mesa Police Department Officer Wulfing on [October 28, 20]11, "I told daddy to stop touching me.  I told him it hurt;" to the Chadwick Center forensic interviewer on [December 15, 20]11, "Daddy put his penis at me" and "He peed on me with his penis."

alleging L.A. had failed to protect the children by not seeking custody and not following up with a restraining order against Robert.

The court sustained the allegations in the petitions, as amended. The court ordered Noah placed in Robert's home over a two-week transition period and placed K.A. with her maternal grandparents. Over Robert's objection, the court granted the maternal grandparents' application to be named de facto parents. Noah began living with Robert on May 25. Agency arranged visits between Noah and K.A. twice a week. Robert had one weekly supervised visit with K.A.

On June 7, the court approved Robert's case plan, which required him to complete group therapy for sexual abuse and undergo individual therapy to demonstrate he could safely parent his children. Robert had already completed a parenting class.

In October, L.A. filed a section 388 petition seeking to have Noah removed from Robert's home because Noah allegedly told her during a visit the previous month that Robert had injured the boy's back. Agency's investigation disclosed Noah had no marks or bruises to his upper body. Noah told the social worker he was content living with Robert and felt safe. The social worker found no indications of abuse in Robert's home, and reported Robert was cooperative, made the child available to Agency when requested and followed up with medical care for him when directed to do so. A medical

4

examination disclosed no evidence of abuse. Noah told another social worker that no one had hurt his back. In November, the court denied L.A.'s section 388 petition.[4]

For the six-month review hearing, Agency recommended Robert receive unsupervised visits with K.A. Reports of Robert's supervised visits with his daughter, now twice a week, showed Robert acted appropriately and were positive. The social worker, however, noted that on occasion while she was transporting K.A. to visits with the mother, the child said negative things about Robert, such as he did mean things to her and gave her a rash in the vaginal area. However, she indicated she felt safe with father. When the social worker queried K.A. about these statements, the child said, "I can't tell you, they told me to tell you that daddy does mean things to me and not to tell you who told me that."

In November, K.A. told the social worker: "mommy said daddy is an idiot[;] she says it all the time, but I don't think he's an idiot. My mommy said to tell you he's an idiot." Next, K.A. said Robert did mean things to her. When the social worker questioned her, K.A. replied: "He gave me a rash. But I think I just dreamed that, I don't think he really did, but my mommy told me [he] did." Noah then told K.A. to not say things that were not true. K.A. responded, "Okay, Noah, I'll stop, but mommy and grandma keep telling me to say daddy did things to me."

---

4    In late November, the social worker observed a bruise on Noah's face. Noah said he walked into a wall. At Robert's home, Noah showed the social worker where and how the accident happened. The social worker noted Noah's explanation was consistent with a ledge on the wall separating the living and kitchen areas.

Robert, who wanted placement of K.A. with him, requested a trial, and L.A. requested a trial on Agency's recommendation that Robert receive unsupervised visits with K.A. In February 2013, Agency obtained a continuance because of statements Noah made a few days before the scheduled trial. Noah told his therapist he wanted Robert to go away and sometimes Robert made him feel uncomfortable and hurt him. Noah told the social worker: "I thought about it for a long time and I told myself to keep it a secret and not to tell anyone." Noah referred to a secret area on his body, which hurt. The social worker arranged a forensic interview. Although he was guarded during the forensic interview, Noah said the secret part of his body was the back of his knees and it hurt when his dad woke him up in the morning, carried him and put him "gently in his seat to eat breakfast." The social worker concluded the allegation Noah made to his therapist was unfounded.

Later in February, K.A.'s therapist reported the child said Robert put his penis around her "private." She also said Robert put his penis in her butt a long time ago. K.A. told the social worker she had bad dreams.

A combined six- and 12-month review trial was conducted in April. In addition to seeking placement of K.A. with him, Robert sought termination of jurisdiction over Noah.

Irene Weiss, K.A.'s therapist since July 18, 2012, testified she got "mixed messages" from the child, who was sometimes inconsistent. Occasionally, K.A. "out of the blue" related she was sexually abused, but then would become guarded and refused to elaborate or provide detail. Weiss said she was not getting the whole picture from a

6

clinical perspective. Weiss could not state whether K.A. had been molested. It was possible the child was coached or was ashamed or afraid.

Weiss diagnosed K.A. as having adjustment disorder with anxious and depressed mood and noted she had anger symptoms. The therapist voiced concerns about safety issues and moving to unsupervised visits between K.A. and Robert if they did not also undergo conjoint therapy. Weiss said she was willing to conduct conjoint therapy with K.A. and Robert, which the social worker was trying to set up in conjunction with unsupervised visits for Robert.

The juvenile court denied Robert's request to terminate jurisdiction over Noah, finding by clear and convincing evidence that conditions still existed which justified the initial assumption of jurisdiction or were likely to exist if the court's supervision was withdrawn. The court continued Noah as a dependent child and continued his placement with Robert.

With respect to K.A., the court found there was a substantial risk of detriment to return her to either parent and continued her as a dependent child.[5] The court noted K.A.'s petition contained her statements of sexual abuse and attributed those statements to an inability or failure by Robert to supervise or protect her. Whether K.A. was in fact

---

[5]     The court explained its detriment finding as follows: Notwithstanding the good visits between K.A. and Robert, "[e]very so often she lays this bomb out on people where she makes statements. They don't seem to be consistent. They're not all the time. It is a very mysterious case[. B]ut . . . because the language of the [section] 300 [subdivision] (b) involved making statements about sexual abuse, and her current therapist saying there are some concerns she has about her making these statements about sexual abuse, Voila, we have detriment, and that's where the court is going to find detriment in this case."

molested was unknown, the court said. Nonetheless, Robert's case plan called for him to address sexual abuse, and he had made substantive progress with the plan. The court ordered conjoint therapy for K.A. and Robert. After four sessions of conjoint therapy, the court ordered unsupervised visitation between them to begin.

DISCUSSION

I. *Refusal to Return Custody of K.A.*

Robert contends the evidence was insufficient to support the court's finding K.A. could not safely be returned to his custody. The contention is without merit.

Section 366.21, subdivision (e), which governs six-month review hearings, and section 366.21, subdivision (f), which governs 12-month review hearings, provide in pertinent part: "the court shall order the return of the child to the physical custody of his or her parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. " Under both provisions, Agency bears the burden of establishing detriment. (§ 366.21, subds. (e) & (f).)

"[T]he risk of detriment must be *substantial*, such that returning a child to parental custody represents some danger to the child's physical or emotional well-being." (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1400.) We review the juvenile court's detriment finding for substantial evidence. (*Id*. at pp. 1400-1401.) Although the court must consider the parent's progress in services, "the decision whether to return the child to parental custody depends on the effect that action would have on the physical or

8

emotional well-being of the child." (*In re Joseph B.* (1996) 42 Cal.App.4th 890, 899.) "Even if the parent has 'largely complied' with his or her reunification plan and some evidence justifies return of the child, the court must look to the totality of facts, including the parent's progress, and may find that return would be detrimental if those facts warrant such a determination." (Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2013) Periodic Review Procedures, § 2.151[5], p. 2-460, citing *Constance K. v. Superior Court* (1998) 61 Cal.App.4th 689, 703-711.)

We review the court's detriment finding for substantial evidence. (*In re Yvonne W.*, *supra*, 165 Cal.App.4th at pp. 1400-1401.) "We do not evaluate the credibility of witnesses, reweigh the evidence, or resolve evidentiary conflicts. Rather, we draw all reasonable inferences in support of the findings, consider the record most favorably to the juvenile court's order, and affirm the order if supported by substantial evidence even if other evidence supports a contrary conclusion." (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.) On appeal, the parent has the burden of showing that there is no evidence of a sufficiently substantial nature to support the court's finding. (*Ibid*.)

Substantial evidence supported the court's detriment finding. K.A. was diagnosed as having adjustment disorder with anxious and depressed mood. Her therapist noted K.A. had anger symptoms and bad dreams. After nine months of therapy, the therapist voiced concerns about safety issues and unsupervised visits between K.A. and Robert if they did not also undergo conjoint therapy. The therapist testified K.A. was inconsistent and guarded in how she feels about being alone with Robert. Considering the visits were

9

still being supervised, the therapist's safety concerns constituted substantial evidence of likely detriment if K.A. were placed with Robert.

We acknowledge that Robert complied with his case plan and his supervised visits with K.A. went well. We also note although these proceedings originated when K.A. made statements indicating Robert had molested her, it was determined at the jurisdictional hearing that this is not a sexual abuse case. But the issue on appeal is not whether some evidence supports Robert's claim. Rather, the issue is whether substantial evidence supports the court's finding. We conclude the record contains substantial evidence of a substantial risk of emotional detriment to K.A. if she were returned to Robert at the last hearing.

In reaching our conclusion, we reject Robert's argument that the court, in finding detriment, improperly relitigated the issue of sexual abuse, which was decided in his favor at the jurisdictional hearing. At a review hearing, the juvenile court can take into account factors unrelated to the original jurisdictional allegations or reasons for removal in determining whether there is detriment to return. (*In re Joseph B.*, *supra*, 42 Cal.App.4th at p. 900.) "Consistent with the purpose of the dependency scheme, the question whether to return a child to parental custody is dictated by the well-being of the child at the time of the review hearing; if returning the child will create a substantial risk of detriment to his or her physical or emotional well being [citations], placement must continue regardless of whether that detriment mirrors the harm which had required the child's removal from parental custody [citations]." (*Ibid*.)

## II. *Continuing Jurisdiction of Noah*

Robert contends the court erred by refusing to terminate jurisdiction over Noah because the concerns regarding him that prompted the dependency had been eliminated. The contention is without merit.

Section 364 provides for review hearings every six months where a child has been removed from parental custody but is later placed back in the home under court supervision. (§ 364, subd. (a); *In re N.S.* (2002) 97 Cal.App.4th 167, 172.) At those hearings, the court determines whether continued supervision over the dependent child is necessary. (§ 364, subd. (c); *In re Gabriel L.* (2009) 172 Cal.App.4th 644, 650.) The court must terminate jurisdiction unless Agency "establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn." (§ 364, subd. (c).) If the court does not terminate jurisdiction, the matter is continued for six months for another hearing on the issue. (§ 364, subd. (d).)

We review the juvenile court's decision whether to continue supervision for substantial evidence. (*In re N.S.*, *supra*, 97 Cal.App.4th at p. 172.) In this regard, we do not determine the credibility of witnesses, attempt to resolve conflicts in the evidence or reweigh the evidence. Instead, we draw all reasonable inferences in support of the findings and view the record favorably to the court's order. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52-53.)

Noah became a dependent under section 300, subdivision (b) because L.A.'s drug abuse created a protective issue. At the same time, there was concern generated by his

11

sister's statements suggesting Robert had sexually abused her—suggestions that were not borne out by any other evidence. Noah was placed with Robert early in the proceedings, and, at the time of the hearing, he had been living with his father for 11 months. Noah was doing well over all, and Robert had conscientiously fulfilled the requirements of his case plan.

Nonetheless, we conclude substantial evidence supports the court's decision to continue jurisdiction over Noah for an additional six months. The court could justifiably conclude there was a need for continued supervision in Noah's case because of the boy's statements to his therapist in February 2013. Noah told his therapist he wanted Robert to go away because Robert made him uncomfortable and sometimes hurt him. In follow-up with the therapist, the social worker and a forensic interviewer, Noah was guarded about his statements, which appeared to have been prompted by Noah's unhappiness with Robert waking him up early in the morning and carrying him to the breakfast table. The social worker's conclusion that there was no abuse by Robert is unassailable;[6] however, Noah's statements were significant because they reflected on his emotional health. Noah has been diagnosed as having adjustment disorder with mixed anxiety and depressed mood. Noah's therapist reported he did not talk much in therapy and had made little progress.

---

[6] We place little if any significance on two earlier incidents involving Noah, including at least one which appears to have been blown out of proportion by L.A. We refer to L.A.'s claim that Robert hurt Noah's back, which Agency determined was an unfounded allegation. Agency also investigated a bruise on Noah's face and concluded it was caused by a self-inflicted accident.

The juvenile court is entitled to consider the totality of the circumstances in deciding whether to retain jurisdiction. (See *In re Chantal S.* (1996) 13 Cal.4th 196, 201 [in making decisions regarding a dependent child, juvenile court must look to totality of child's circumstances].) In this regard, the record supports a finding that continued jurisdiction was necessary because problems remained that negatively affected Noah's emotional health. Under these circumstances, continued court intervention was necessary to ensure Noah continued to receive therapy and obtain the help he needed. "A juvenile court has a continuing responsibility to account for the welfare of a dependent child under its jurisdiction, wherever placed, unless and until a permanent and stable home is established." (*In re Rosalinda C.* (1993) 16 Cal.App.4th 273, 279.)

Given the genesis of this case in allegations surrounding K.A. and Noah's awareness of them,[7] the boy's statements to his therapist in February 2013 constitute substantial evidence that the conditions which caused the court to assume jurisdiction over him still existed or would exist if jurisdiction were terminated; therefore, continuing jurisdiction over Noah for another six months was warranted. (§ 364, subd. (c).) "[T]he purpose of any dependency hearing is to determine and protect the child's best interests." (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1425.)

We are not persuaded otherwise by Robert's arguments that the social worker testified that she was not opposed to terminating jurisdiction over Noah because in her

---

[7] This was evidenced by Noah telling his sister to stop making untrue statements.

13

opinion there was no risk of detriment to do so. It was up to the court to decide what weight to give to this testimony.

DISPOSITION

The orders are affirmed.


BENKE, J.

WE CONCUR:


McCONNELL, P. J.


HALLER, J.