Filed 2/20/14  In re Davion B. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re DAVION B., a Person Coming Under the Juvenile Court Law. | B246846 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. BK00586) |
| Plaintiff and Respondent, | |
| v. | |
| ERIKA J., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Anthony Trendacosta, Juvenile Court Referee. Affirmed.

Nancy Rabin Brucker, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Peter Ferrera, Deputy County Counsel, for Plaintiff and Respondent.

————————————

INTRODUCTION

Mother appeals from the order of the juvenile court at the six-month review hearing (Welf. & Inst. Code, § 366.21, subd. (e)).[1] She contends the evidence does not support the court's findings that (1) the Department of Children and Family Services (the Department) provided her with reasonable reunification services and that (2) returning her son Davion to her custody after only six months of services would be detrimental to the child. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Background*

Mother was incarcerated on a drug possession conviction when, in December 2011, the Department detained Davion because of allegations that father, David B.,[2] had been sexually abusing Davion's half sister.

Mother had already lost custody of two older children because of her substance abuse. The older one, John, was born in 1990 with a positive toxicology screen for cocaine. Mother's first two children were ultimately placed in a guardianship with the maternal grandmother in the 1990s. In all, mother has five children, ranging in age from 21 to Davion, who was three at the time he was detained. Mother has the custody of none of her children.

Mother has an extensive criminal history dating back to 1993 involving burglary and prostitution. The most common reason for mother's arrest was possession of narcotics. Her most recent conviction was for possession of a controlled substance in May 2011, for which she was sentenced to two years in prison.

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] Father is not a party to this appeal.

2. *Adjudication*

The juvenile court sustained a petition alleging father's sexual abuse of Davion's sibling. (§ 300, subd. (j).) Mother was scheduled to be released and was planning on living with father while on probation. The Department did not recommend mother receive family reunification services in light of her failure to reunify with two previous children and her continuing substance abuse problem. The court stated it wanted mother to test clean, comply with the terms and conditions of probation, participate in an after-care drug program, i.e., A.A. or N.A., with a sponsor, and complete a parenting course. The court stated if mother could prove she was complying and making progress, it would be inclined to order reunification services.

Mother entered a residential treatment program at the Asian American Drug Abuse Program (AADAP) in May 2012, about a month after leaving prison. She was scheduled to drug test on a bi-monthly basis.

3. *Disposition*

At the disposition hearing in June 2012, the juvenile court granted reunification services to the parents because Davion was over the age of three and had spent a significant amount of time with *father*. The court ordered mother to be in an inpatient program with random weekly drug and alcohol testing, complete a parenting course, undergo individual counseling, and comply with the terms of her probation. The court directed the Department to file a supplemental report to address mother's progress in her program. The court awarded mother monitored visitation at least three times a week and gave the Department discretion to liberalize that visitation. However, the court "advise[d] both parents that you have no leeway. None. Zero. You comply fully with the case plan or I will consider allowing the Department to file a [section] 388 petition [to] terminate your reunification services early. So . . . I'm giving you this chance against the Department's recommendation."

The school district found that Davion qualified for speech and language services to assist him with articulation. His speech problem had no impact on his educational performance.

On June 5, 2012, only 20 days after entering, mother left AADAP. She left after telling her counselor that the juvenile court had reunified her with Davion and so she no longer needed to be in the program. Three weeks later, mother enrolled in House of Uhuru, a drug and alcohol in-patient rehabilitation program.

The House of Uhuru was unable to assess mother's progress in August 2012 but reported that mother was in the early orientation phase of the program and had tested negative three times in the 27 days she has been in the program. Mother also had produced three negative drug tests. Mother was reportedly in compliance with both her rehabilitation program and the terms of her probation. The Department opined in early August 2012, that "it is not in the child Davion's best interest to liberalize mother's visit[s] or to release the child to the mother's care at her in-patient drug program." The reasons were that mother was still in the first phase of drug treatment, she had missed about two weeks of that phase, and her counselor at the House of Uhuru stated that mother was not yet ready.

By late November 2012, mother was in the process of moving to phase three of her treatment program. She tested negative 10 times between July 20 and November 5, 2012 and failed to test once in September 2012. Otherwise, mother was in compliance with her treatment plan, and was cooperative in treatment. The House of Uhuru stated in November 2012, "We would welcome the opportunity to have her son here with her in our Mother Infant Program. We have a fully licensed child care for the child while his mother is in treatment." The quality of mother's visits were reportedly good. The Department recommended that mother "be given more time to complete [her] Court ordered services, as [she] appeared to make efforts to reunify with [Davion]." The social worker planned to assess mother's in-patient program to determine the appropriateness of liberalizing the visits at the program.

In December 2012, the Department moved Davion to a new foster home because of accusations the caregiver had abused another foster child in the same placement. Davion had begun therapy for social withdrawal, selective mutism, and tantrums. Davion only recently began to show slight progress in reducing negative behaviors. However,

after only two months, therapy ended with the change in placement because the new foster parent could not transport the child to sessions. Thus, it was too soon for the therapist to assess whether parental visits should be liberalized to unmonitored, and so it was likewise too soon to assess whether Davion could live with mother at her treatment program. Also, as the therapist had not met the parents, she was unable to assess whether it was necessary or appropriate to have conjoint counseling. Therapy was important, and so in mid-January 2013, the Department commenced a search for a more appropriate foster placement that could accommodate Davion's intensive therapy.

Mother missed a second drug test and produced no result for a third test in December 2012. Mother justified the second missed test on her lack of a cell phone. Paperwork was the reason for the missed test in December. Then, in January 2013, mother was unable to test because of a spelling error and so the social worker asked her to test three days later. She produced a negative result.

4. *The contested six-month review hearing*

The social worker testified at the section 366.21, subd. (e) hearing that the Department was not recommending mother's visits be liberalized because Davion's therapist had not observed any interaction between mother and son and could not give an opinion about the impact of visits on the child. The transportation problem caused a month-long hiatus in therapy. The social worker described the Department's efforts to remedy the transportation problem: She had multiple conversations with the caregiver and the therapist to arrange alternate transportation. She also considered having someone from the Department staff drive Davion. In the meantime, she wanted to locate another placement for Davion because this foster parent was not advocating for the child's wellbeing. The social worker has observed Davion displaying selective mutism during visits, and during the last visit he appeared to be in a "bad mood all of a sudden."

Mother's counselor at the House of Uhuru testified that mother was in compliance with the treatment. She was in phase three of four and could remain there until June 2013, after which she could go to transitional housing. The House of Uhuru had space

for Davion.  The counselor admitted she had not yet met the child although mother had been there for six months.

The Department recommended continued reunification services for mother.  The Department wanted Davion to continue in therapy and wanted a recommendation from the child's therapist before liberalizing visits or moving Davion in with mother.  Typically, when the Department has the discretion to liberalize visitation, it seeks verification from the expert therapists and counselors before acting.  Davion's attorney recommended short, unmonitored visits with mother.

The juvenile court found that returning Davion to his parents would create a substantial risk of detriment to him necessitating current placement for the child.  The court found mother was in compliance with her case plan and that the Department had made reasonable efforts to provide services.  The court ordered the Department to facilitate short, unmonitored visits for mother and Davion.  Mother's appeal followed.

CONTENTS

Mother contends there is insufficient evidence to support the juvenile court's substantial-risk and reasonable-efforts findings.

DISCUSSION

Section 366.21, subdivision (e), which governs the six-month review hearing, reads in relevant part, "the court shall order the return of the child to the physical custody of his or her parent or legal guardian *unless* the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child.  The social worker shall have the burden of establishing that detriment." (§ 366.21, subd. (e), italics added.)  "The failure of the parent . . . to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental." (*Ibid.*)

The parent has the burden of showing that there is no evidence of a sufficiently substantial nature to support the court's finding.  (*In re Yvonne W.* (2008)

6

165 Cal.App.4th 1394, 1400–1401.) We review the juvenile court's detriment finding for substantial evidence. (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 974.)

Mother contends that the Department failed to make the requisite showing of detriment. Claiming her most recent arrest was for "*stealing, not for a drug related crime,*" mother contends "[t]here was no evidence presented that mother was a current substance abuser, nor were any such allegations made against mother in the Section 300 petition." (Italics added.) Mother reiterates she was a nonoffending parent in this case and emphasizes her compliance with the court-ordered case plan and her probation.

Although the failure to comply with a reunification services plan is prima facie evidence of detriment (§ 366.21, subd. (e)), the opposite is not necessary true, namely that compliance with a reunification plan *precludes* a detriment finding. Even when the parent has largely complied with the case plan, returning the child to the parent can still be detrimental to the child. (*Constance K. v. Superior Court* (1998) 61 Cal.App.4th 689, 705-706.) "Compliance with the reunification plan is certainly a pertinent consideration . . . however, it is not the sole concern before the dependency court judge. [Citations.]" (*Id*. at p. 704.) " 'The problem is not, as it were, quantitative (that is, showing up for counseling or therapy or parenting classes, or what have you) but qualitative (that is, whether the counseling, therapy or parenting classes are doing any good).' " (*Id.* at p. 706; *In re Joseph B.* (1996) 42 Cal.App.4th 890, 901.)

Here, there is no question that mother has been participating in and largely complying with her court-ordered case plan. However, the juvenile court properly considered additional facts when making its detriment finding, namely that mother has a very entrenched 20-year drug abuse problem and history of arrest and incarceration therefor, her assertion to the contrary notwithstanding. Mother has been abusing drugs for more than half of her life and lost custody of other children because of her drug abuse. Mother was not arrested most recently for stealing, as she asserts, but for possession of a controlled substance. Indeed her last two convictions were for the same offense. Although mother has begun to address her abuse, this is not a problem that is easily ameliorated. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531, fn. 9 ["It is the nature

7

of [drug] addiction that one must be 'clean' for a much longer period than 120 days to show real reform"]; *In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081 [three months of sobriety insufficient to show changed circumstances under § 388 given extensive history of drug abuse and failure to reunify]; *In re Amber M.* (2002) 103 Cal.App.4th 681, 686-687 [one year sobriety insufficient to show changed circumstances under § 388].) And, although mother claims excuses for her failures to test, those failures still count as positive test results.

"[T]he risk of detriment must be *substantial*, such that returning a child to parental custody represents some danger to the child's physical or emotional well-being." (*In re Yvonne W.*, *supra*, 165 Cal.App.4th at p. 1400.) While the juvenile court must consider the parent's progress in court-ordered services, "the decision whether to return the child to parental custody depends on the effect that action would have on the physical or emotional well-being of the child." (*In re Joseph B.*, *supra*, 42 Cal.App.4th at p. 899.) It would manifestly be detrimental to Davion's emotional well-being to return him to mother's custody, given mother's entrenched substance-abuse history, her sobriety has only been achieved in the controlled environment of prison or a treatment facility, her extensive criminal history, the fact she failed to reunify with other children, and the fact Davion has not lived with mother for most of his life.

It is true that the juvenile court did not sustain a section 300 allegation against mother, a fact that will most decidedly be relevant when the court is faced with the question whether to terminate reunification services. However, the juvenile court must consider the effect of reunification on the child's well-being. (*In re Joseph B.*, *supra*, 42 Cal.App.4th at p. 899.) At this stage of the dependency, the juvenile court has the duty to evaluate mother's nine months of efforts against her previous failures and to evaluate the likelihood that she would be able to maintain a stable, sober, and noncriminal lifestyle such that her instability would not pose a substantial risk of detriment to Davion (*Ibid.*) Mother's efforts at sobriety are a good start, but the record supports the juvenile court's concern about "where [mother's] going to be once she finishes her program" "and is on her own without an appropriate support."

8

Mother also challenges the juvenile court's finding the Department made reasonable efforts. When reunification services are ordered, the Department is obligated to make " '[a] good faith effort' to provide reasonable services responding to the unique needs of each family. [Citation.]" (*In re Monica C.* (1995) 31 Cal.App.4th 296, 306.) " '[T]he record should show that the [Department] identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the [parent] during the course of the service plan, and made reasonable efforts to assist the [parent when] compliance proved difficult . . . .' [Citation.]" (*In re Ronell A.* (1995) 44 Cal.App.4th 1352, 1362.) " 'The effort must be made to provide suitable services, in spite of the difficulties of doing so or the prospects of success.' [Citation.]" (*Robin V. v. Superior Court* (1995) 33 Cal.App.4th 1158, 1164-1165.)

We review the juvenile court's finding that reasonable services were provided under the substantial evidence test. (*Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1018.)[3] Toward that end, we " 'construe[] all reasonable inferences in favor of the juvenile court's findings regarding the adequacy of reunification plans and the reasonableness of [the Department's] efforts.' [Citation.]" (*Ibid.*)

Here, mother first argues the Department failed to provide reasonable services because it decided not to liberalize mother's visitation from monitored to unmonitored, despite the court's order granting the Department discretion to do so. She argues there was "no sound reason . . . that justified the failure . . . to liberalize mother's visits and/or place Davion in her custody." To the contrary, the social worker made it clear in her testimony that the Department does not liberalize visitation until it receives a professional assessment from a therapist about the advisability. Davion's therapist stated it was too soon to assess whether visits should be liberalized to unmonitored, or whether Davion could safely live with mother. That the Department's discretion was not exercised the

---

[3]    Citing subdivision (g) of section 366.21, mother asserts that the standard of proof for the reasonable services finding is clear and convincing evidence. However, subdivision (g) is inapplicable to this appeal.

9

way mother would like does not mean that the Department did not provide adequate services.

Mother also points to the failure of the social worker to arrange for adequate transportation once Davion was moved to the new caregiver who could not drive him to therapy. She argues that if the Department was planning on relying on the recommendation of Davion's therapist in deciding whether to liberalize visitation, it was incumbent on the social worker to assure that Davion was attending therapy. However, the record here shows the Department worked hard to arrange for alternative transportation as soon as it became clear that Davion's caretaker could not take him. When those arrangements fell through, the social worker began looking for an alternative placement for the child. In any event, therapy was suspended for one month only.

Mother next asserts that the Department "had not put any effort into this case during the two months [that the social worker] was off the case." She reaches this conclusion by noting the social worker did not know that Davion had changed schools; learned five months after the fact that the school district recommended speech therapy for Davion; and the social worker gave no reason for her two month absence from the case. However, the change in schools was recommended by Davion's former therapist to assure that Davion received all of the services he needed. The delay in speech therapy was caused by Davion's school district, not the social worker. In any event, the child's speech problem had no impact on his educational performance. Finally, the reason for the social worker's absence is irrelevant to the question of adequacy of services provided by the Department. The record supports the juvenile court's finding the Department was providing adequate services.

DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

KLEIN, P. J.

CROSKEY, J.

11