165 Cal.App.4th 1394 (2008)
In re YVONNE W., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, Plaintiff and Respondent,
v.
CELESTE W., Defendant and Appellant.
No. D052204.
Court of Appeals of California, Fourth District, Division One.
July 28, 2008.
*1396 Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant.
John J. Sansone, County Counsel, John E. Philips, Chief Deputy County Counsel, and Erica B. Gardner, Deputy County Counsel, for Plaintiff and Respondent.
Valerie N. Lankford, under appointment by the Court of Appeal, for Minor.

*1397 OPINION
AARON, J.
Celeste W., mother of dependent minor Yvonne W., appeals a juvenile court order, made at an 18-month review hearing, continuing Yvonne's placement in foster care and ordering Yvonne's permanent plan to be another permanent planned living arrangement (APPLA). Celeste challenges the sufficiency of the evidence to support the court's finding that it would be detrimental to Yvonne to return her to Celeste's custody under Welfare and Institutions Code[1] section 366.22, subdivision (a). Celeste also contends that she was not offered or provided reasonable services. We conclude that the evidence was insufficient to support the court's finding that returning Yvonne to Celeste's custody would create a substantial risk of detriment to Yvonne. Accordingly, we reverse the order.

I

FACTUAL AND PROCEDURAL BACKGROUND
In July 2006, 11-year-old Yvonne became a dependent of the juvenile court and was removed from parental custody based on findings that Celeste used marijuana and was arrested on drug charges in Yvonne's presence. (§ 300, subd. (b).) According to reports filed by the San Diego County Health and Human Services Agency (Agency), Celeste's boyfriend, Stephan C., was selling crack cocaine from the family home, where the police found cocaine base and marijuana. The police also found drug paraphernalia in Celeste's purse. Celeste admitted that she smoked marijuana, but denied knowing that Stephan used drugs or that he sold them from their home. Yvonne was aware of Stephan's drug activities and said that Celeste smoked "pot" and drank alcohol.
During the first six months of reunification, Celeste enrolled in a residential drug treatment program (KIVA), completed a parenting class, participated in individual therapy and submitted to a psychological evaluation. According to her therapist, Celeste was knowledgeable about positive parenting techniques, took responsibility for her bad choices and showed empathy for Yvonne. Celeste enrolled in the Substance Abuse Recovery Management System (SARMS) program, submitted to random drug testing, and appeared strongly motivated in her substance abuse recovery. She and Yvonne were having regular unsupervised visits and Yvonne looked forward to seeing Celeste. The visits went well and progressed to overnight and weekend visits. Yvonne was placed in a group home until a suitable foster care placement could be found.
*1398 In January 2007, Celeste gave birth to a baby boy, who remained in her care. Several months later, Celeste was discharged from KIVA because she had a disagreement with the program director. Nevertheless, Celeste was making progress in therapy, had maintained her sobriety, and was in compliance with SARMS. She was having difficulty finding affordable housing and temporarily moved in with relatives. Celeste requested assistance with locating appropriate housing so that Yvonne could be placed with her. The social worker gave Celeste a referral for housing and employment.
Yvonne remained in her group home, where she was having behavioral and emotional problems. She was receiving individual therapy to address these issues. Yvonne wanted to live with her mother and baby brother. According to a psychological evaluation, Yvonne loved Celeste and felt emotionally connected to her, but also felt a great deal of rage toward her. The evaluator recommended that Yvonne continue in therapy, participate in conjoint therapy with Celeste, and receive a referral for an individual education plan (IEP).
At a 12-month hearing, the court found that Celeste had made substantive progress with the provisions of her case plan, but that returning Yvonne to Celeste's custody would create a substantial risk of detriment to Yvonne. The court ordered six more months of reunification services for Celeste.
In a report prepared for the 18-month hearing, the social worker stated that Celeste had found "appropriate housing" at St. Vincent de Paul Village shelter, where she could stay for two years. Celeste was in compliance with her services, and was able to provide a safe environment for her six-month-old son. She had completed 15 sessions of individual therapy, and was committed to maintaining her sobriety and reunifying with Yvonne. Celeste was active in the processes of having Yvonne assessed for medication, an IEP, and Regional Center services. Celeste was also participating in services to obtain housing and employment through Home Start. Celeste's therapist recommended that she continue in therapy until she achieved all of her treatment goals and progressed to conjoint therapy with Yvonne.
Yvonne had been placed in a foster home that was capable of providing supervision and emotional support for her. She was doing well in that placement and had attained emotional stability. Yvonne was having unsupervised weekend visits with Celeste at the shelter, where Yvonne had a bed and space for her personal belongings. However, Yvonne complained that she sometimes felt uncomfortable visiting Celeste at the shelter and that she often *1399 felt sick after visits. Celeste reported that Yvonne sometimes had a negative attitude toward people at the shelter and appeared to "look down" on them. Yvonne expressed her fear of being homeless. She was addressing these and other concerns in therapy.
In the social worker's opinion, there was a risk to Yvonne if she were returned to Celeste's care too soon. The social worker stated that Celeste still needed to (1) obtain stable permanent housing; (2) participate in conjoint therapy with Yvonne; (3) develop a supervision plan for Yvonne; and (4) become an active participant in Yvonne's academics, therapy and other services. Additionally, the social worker recommended that Yvonne's assessment for an IEP be completed before her placement changed.
At a contested 18-month hearing, the court received in evidence Agency's reports and heard argument of counsel. The court recognized that although Celeste had complied with services and maintained her sobriety, the evidence showed that Yvonne still needed time to heal, that she was receiving structure and discipline in her current placement, and that she was in the middle of an IEP assessment. The court then found, by a preponderance of the evidence, that returning Yvonne to Celeste's custody would create a substantial risk of detriment to Yvonne's physical and emotional well-being because Yvonne had expressed fear, anxiety and unhappiness with Celeste's living arrangement. The court selected APPLA as Yvonne's permanent plan, ordered further services for Celeste under section 366.3, and set a review hearing.

II

DISCUSSION

A

The Evidence Was Insufficient to Support the Court's Finding That Yvonne Could Not Safely Be Returned to Celeste's Custody
(1) Celeste challenges the sufficiency of the evidence to support the court's finding, made at the 18-month review hearing, that returning Yvonne to her custody would "create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§ 366.22, subd. (a).) Celeste asserts that neither her housing nor Yvonne's incomplete IEP constitutes evidence of a substantial risk of detriment to Yvonne. We agree.

*1400 B

Agency Has the Burden of Showing Substantial Risk of Detriment
(2) The dependency scheme is based on the law's strong preference for maintaining family relationships whenever possible. (David B. v. Superior Court (2004) 123 Cal.App.4th 768, 788 [20 Cal.Rptr.3d 336]; Rita L. v. Superior Court (2005) 128 Cal.App.4th 495, 507 [27 Cal.Rptr.3d 157].) When a child is removed from parental custody, certain legal safeguards are applied to prevent unwarranted or arbitrary continuation of out-of-home placement. (In re Jasmon O. (1994) 8 Cal.4th 398, 420 [33 Cal.Rptr.2d 85, 878 P.2d 1297]; David B. v. Superior Court, supra, at p. 789.) Until reunification services are terminated, there is a statutory presumption that a dependent child will be returned to parental custody. (In re Marilyn H. (1993) 5 Cal.4th 295, 308 [19 Cal.Rptr.2d 544, 851 P.2d 826].) As relevant here, section 366.22, subdivision (a) requires the juvenile court at the 18-month review hearing to return the child to the custody of the parent unless it determines, by a preponderance of the evidence, that return of the child would create a substantial risk of detriment to the child's physical or emotional well-being.
The social worker has the burden of establishing detriment. (§ 366.22, subd. (a); Jennifer A. v. Superior Court (2004) 117 Cal.App.4th 1322, 1345 [12 Cal.Rptr.3d 572].) The standard for showing detriment is "a fairly high one. It cannot mean merely that the parent in question is less than ideal, did not benefit from the reunification services as much as we might have hoped, or seems less capable than an available foster parent or other family member." (David B. v. Superior Court, supra, 123 Cal.App.4th at p. 789.) Rather, the risk of detriment must be substantial, such that returning a child to parental custody represents some danger to the child's physical or emotional well-being. (Id. at p. 788; Rita L. v. Superior Court, supra, 128 Cal.App.4th at p. 505.)
In evaluating detriment, the juvenile court must consider the extent to which the parent participated in reunification services. (§ 366.22, subd. (a); Blanca P. v. Superior Court (1996) 45 Cal.App.4th 1738, 1748 [53 Cal.Rptr.2d 687].) The court must also consider the efforts or progress the parent has made toward eliminating the conditions that led to the child's out-of-home placement. (§ 366.22, subd. (a); In re Dustin R. (1997) 54 Cal.App.4th 1131, 1141-1142 [63 Cal.Rptr.2d 269].)
This court views the record to determine whether substantial evidence supports the court's finding that Yvonne would be at substantial risk of *1401 detriment if returned to Celeste's custody. (Angela S. v. Superior Court (1995) 36 Cal.App.4th 758, 763-764 [42 Cal.Rptr.2d 755].) In so doing, we consider the evidence favorably to the prevailing party and resolve all conflicts in support of the trial court's order. (In re David M. (2005) 134 Cal.App.4th 822, 828 [36 Cal.Rptr.3d 411].) "Substantial evidence" means evidence that is reasonable, credible and of solid value; it must actually be substantial proof of the essentials that the law requires in a particular case. (In re N. S. (2002) 97 Cal.App.4th 167, 172 [118 Cal.Rptr.2d 259].) In the absence of substantial evidence showing such detriment, the court is required to return the minor to parental custody. (Rita L. v. Superior Court, supra, 128 Cal.App.4th at p. 505.)

C

Celeste's Living Arrangement Does Not Create a Substantial Risk of Detriment to Yvonne
The uncontroverted evidence showed that Celeste completed her case plan and that she has been sober for more than a year. The social worker reported that Celeste is committed to her sobriety, that she appears to have benefitted from the services provided, and that she has made changes in her life that are in her children's best interests. Celeste has acquired knowledge of positive parenting and is able to show empathy. Celeste has stable and "appropriate" housing at a long-term shelter where she is safely parenting her son. In essence, Celeste did everything Agency asked of her, including eliminating the conditions that led to Yvonne's out-of-home placement. Further, Yvonne's behavior improved as a result of regular visits with Celeste.
(3) The court recognized Celeste's progress and expressly commended her for maintaining her sobriety and obtaining long-term housing at the shelter. Nevertheless, the court found detriment based on Celeste's housing situation, citing Yvonne's expressed fear, anxiety and unhappiness about living in the shelter. However, nothing in the record shows that conditions at the shelter pose a risk of harm to Yvonne in any identifiable way. Indeed, Celeste is successfully raising her young son in that environment and is able to provide for his safety, health and well-being. Yvonne was having unsupervised weekend visits at the shelter with no reported problems other than her dislike of the shelter and its residents. A child's dislike of a parent's living arrangement, without more, does not constitute a substantial risk of detriment within the meaning of section 366.22, subdivision (a). Proving substantial detriment cannot mean merely proving that a parent's living arrangement is less than ideal. (David B. v. Superior Court, supra, 123 Cal.App.4th at p. 789 [court could not properly consider that parent was too poor to afford housing to support its detriment finding].) Celeste's limited financial resources, which *1402 require her to live in a shelter until she can obtain alternative housing, are not a legitimate ground for finding detriment. (In re G.S.R. (2008) 159 Cal.App.4th 1202, 1213 [72 Cal.Rptr.3d 398] [agency cannot "bootstrap" the fact that parent was too poor to afford housing to support a detriment finding].) "We cannot separate parents and their children merely because they are poor." (David B. v. Superior Court, supra, at p. 792.)
Moreover, nothing in the record indicates that Celeste was informed that having Yvonne returned to her custody was contingent on Celeste finding alternative housing. Rather, the social worker reported that Celeste had found "appropriate" housing at St. Vincent de Paul Village shelter. In this regard, Agency "failed to focus on the one issuehousingthat is arguably determinative in this case." (David B. v. Superior Court, supra, 123 Cal.App.4th at p. 774.)
Despite Yvonne's concerns about the shelter and the prospect of becoming homeless, she "very much" wants to reunify with Celeste.[2] Nothing in the record indicates that Celeste is incapable of adequately parenting Yvonne. Agency presented no specific and objective evidence to show that Yvonne would suffer detriment, including serious psychological or emotional injury, if she were placed with Celeste at the shelter. (See Blanca P. v. Superior Court, supra, 45 Cal.App.4th at p. 1750.)

D

Agency's Concerns Regarding Yvonne's Best Interests Do Not Constitute Detriment
In recommending against returning Yvonne to Celeste's custody, Agency argued: (1) Yvonne and Celeste need to participate in conjoint therapy; (2) Celeste needs to develop a supervision plan for Yvonne and become organized enough to actively participate in Yvonne's life; (3) Yvonne's placement should not be changed until her IEP assessment is completed; and (4) Yvonne needs more time to reunify with Celeste as part of a transition plan.
(4) Although the factors that Agency cites address Yvonne's best interests and Agency's preference for allowing a smooth transition for Yvonne, they do not overcome the presumption in favor of reunification by proving that returning Yvonne to Celeste's custody would create a substantial risk of detriment to Yvonne's physical or emotional well-being. (§ 366.22, subd. (a).) *1403 Whether conjoint therapy for Yvonne and Celeste would benefit the parentchild relationship is not a proper inquiry at the 18-month hearing, where the court's analysis necessarily focuses on detriment. (David B. v. Superior Court, supra, 123 Cal.App.4th at p. 788 [minor's purported lack of significant bond with parent was not relevant inquiry at 18-month hearing]; Rita L. v. Superior Court, supra, 128 Cal.App.4th at p. 507 [court erred by considering quality of minor's relationship with de facto parent at hearing under § 366.22, subd. (a)].) Nothing in the record supports a finding that without conjoint therapy, Yvonne will be at substantial risk of detriment in Celeste's care.
Similarly, Celeste's lack of a supervision plan, her lack of organizational skills and Yvonne's incomplete IEP assessment do not pose any particular danger to Yvonne within the meaning of section 366.22, subdivision (a). Thus, continuing Yvonne in out-of-home care based on these facts is unwarranted. (In re Jasmon O., supra, 8 Cal.4th at p. 420.) The Agency's desire for more time beyond the 18-month review hearing, to ensure a smooth transition for Yvonne's return to Celeste's custody, is contrary to the legislative presumption that a minor will be returned to parental custody no later than the 18-month date, absent a showing of substantial detriment. (§ 366.22, subd. (a); Bridget A. v. Superior Court (2007) 148 Cal.App.4th 285, 311 [55 Cal.Rptr.3d 647]; In re Elizabeth R. (1995) 35 Cal.App.4th 1774, 1787 [42 Cal.Rptr.2d 200].)
(5) Even if the success of Yvonne's transition to Celeste's care were contingent on addressing the deficiencies the Agency cites, there are less drastic means by which this could be accomplished. The court has the authority to return a minor to parental custody at an 18-month hearing and, at the same time, order family maintenance services under court supervision. (Bridget A. v. Superior Court, supra, 148 Cal.App.4th at pp. 311-312.) An order returning Yvonne to Celeste's custody and directing that family maintenance services be provided would achieve the legislative goal of family preservation, and would ameliorate any remaining concerns that Agency has about Yvonne's best interests.

E

We Decline to Dismiss the Appeal as Moot
While the appeal was pending, Agency filed a motion to dismiss the appeal as moot because the juvenile court has since returned Yvonne to Celeste's custody. Agency argues the propriety of the court's order continuing Yvonne's placement in foster care and ordering APPLA as her permanent plan is no longer at issue. Celeste filed an opposition to the motion, arguing *1404 the issues are not moot, and even if they are, this court should exercise its inherent authority to decide the merits of the controversy.[3]
(6) An appeal becomes moot when, through no fault of the respondent, the occurrence of an event renders it impossible for the appellate court to grant the appellant effective relief. (In re Jessica K. (2000) 79 Cal.App.4th 1313, 1315-1316 [94 Cal.Rptr.2d 798].) However, a reviewing court may exercise its inherent discretion to resolve an issue rendered moot by subsequent events if the question to be decided is of continuing public importance and is a question capable of repetition, yet evading review. (Laurie S. v. Superior Court (1994) 26 Cal.App.4th 195, 199 [31 Cal.Rptr.2d 506]; In re Raymond G. (1991) 230 Cal.App.3d 964, 967 [281 Cal.Rptr. 625].) We decide on a case-by-case basis whether subsequent events in a juvenile dependency matter make a case moot and whether our decision would affect the outcome in a subsequent proceeding. (In re Dani R. (2001) 89 Cal.App.4th 402, 404-405 [106 Cal.Rptr.2d 926]; In re Dylan T. (1998) 65 Cal.App.4th 765, 769 [76 Cal.Rptr.2d 684].)
Here, the issues raised in this appeal are of continuing public importance because they challenge the court's finding that a parent's housing, previously deemed by Agency to be adequate, creates a substantial risk of detriment to a minor when there are no other protective issues to warrant continued out-of-home placement. (See In re Joshua C. (1994) 24 Cal.App.4th 1544, 1548 [30 Cal.Rptr.2d 10] [refusing to address errors on appeal by declaring the case moot has the undesirable result of insulating erroneous rulings from review].) Further, because the court continued its jurisdiction of Yvonne, the basis for the court's detriment finding at the 18-month hearing could continue to adversely affect Celeste should Yvonne again be removed from Celeste's care. Thus, we have exercised our inherent discretion to resolve the issue of Yvonne's return despite subsequent events. Agency's motion to dismiss the appeal as moot is denied.

F

Conclusion
Because there is no substantial evidence to support a finding of detriment, the court was required to return Yvonne to Celeste's custody at the 18-month hearing. (§ 366.22, subd. (a).) Continuing Yvonne's placement in foster care with APPLA as her permanent plan was error.[4]

*1405 DISPOSITION
The order is reversed.
Benke, Acting P. J., and Nares, J., concurred.
NOTES
[1] Statutory references are to the Welfare and Institutions Code.
[2] Minor's counsel on appeal, advocating for Yvonne's best interests, contends that Yvonne should be returned to Celeste's custody.
[3] Minor's counsel joined in Celeste's request that this court decide the case on the merits.
[4] In light of our holding, we need not address Celeste's challenge to the sufficiency of reunification services.