Filed 7/16/15  N.S. v. Super. Ct. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| N.S.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF RIVERSIDE COUNTY,<br><br>    Respondent;<br><br>RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>    Real Party in Interest. | E063161<br><br>(Super.Ct.No. RIJ1300948)<br><br>OPINION |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Jacqueline C. Jackson, Judge.  Petition granted.

Law Offices of Vincent W. Davis & Associates and Stephanie M. Davis for Petitioner.

No appearance for Respondent.

No appearance for Real Party in Interest.

1

The juvenile court terminated petitioner's (mother) reunification services at the 18-month review hearing. Mother filed a petition for extraordinary writ in which she contends real party in interest Riverside County Department of Public Social Services (the department) failed to provide her reasonable services with respect to housing assistance and that insufficient evidence supports the juvenile court's determination that it would be detrimental to return N.S. (minor, born October 2008) to her custody. The petition is granted, the juvenile court's orders are reversed, and the matter is remanded with directions.

## FACTS AND PROCEDURAL HISTORY

On August 23, 2013, sheriff's deputies responded to a home based on reports of the theft of utilities. Officers found evidence of marijuana cultivation. The residence had illegal water and electrical bypasses. Mother was in a car outside the residence with her boyfriend and minor. A methamphetamine pipe and methamphetamine were found in the car door. Father was arrested for being under the influence of methamphetamine and charged with electricity theft.[1] Mother's boyfriend was arrested for being under the influence of controlled substances. Mother was charged with child endangerment.

Mother had a prior history with the department. On July 30, 2009, a parole search of minor's paternal grandmother's home resulted in the discovery of a filthy home full of fire hazards. Eight adults and three minors were in the home at the time. The adults were smoking marijuana; bongs and marijuana plants were found inside the home. Mother

_____

[1] Father is not a party to the petition.

arrived later and tested positive for methamphetamine. Allegations against mother were deemed substantiated and mother received family maintenance services until the dependency was terminated on October 4, 2010.

On March 16, 2012, allegations of emotional abuse and general neglect were received by the department. The former was deemed unfounded and the latter inconclusive. On June 20, 2012, the department received another allegation of general neglect which was deemed unfounded. Allegations of emotional and sexual abuse and general neglect were made on June 16, and 17, 2013. The allegations were deemed unfounded.

Mother had a criminal history including two convictions for possession of controlled substances, two DUIs, and credit forgery. Father had a criminal history including battery, presenting false identification to a police officer, two convictions for being under the influence of a controlled substance, and two convictions for possession of a controlled substance.

The department placed minor with the maternal great grandmother (MGGM) on August 24, 2013. The department filed a Welfare and Institutions Code section 300[2] dependency petition alleging, as to mother, that she abused methamphetamine while caring for minor and was arrested for being under the influence of controlled substances and child endangerment (B-1); exposed minor to a detrimental home environment including a marijuana lab, open containers of alcohol, drug paraphernalia, and an

---

[2] All further statutory references are to the Welfare and Intuitions Code.

3

unstable housing situation filled with known criminals and substance abusers (B-3); had been subjected to domestic violence by her boyfriend (B-4); and had a criminal history (B-5). The court detained minor on August 28, 2013.

In the jurisdiction and disposition report filed September 16, 2013, the social worker noted minor had lived with the MGGM in the past and until he was three and half years old.[3] Mother indicated she had used methamphetamine since she was 18 years old. When asked about their needs, parents responded they needed stable housing. The case plan required mother attend general counseling, a domestic violence program, substance abuse services, test negative for drugs, and acquire stable housing.

On September 19, 2013, the juvenile court found the allegations in the amended petition true,[4] found minor a dependent of the court, removed minor from parents' custody, and ordered reunification services for parents. In the status review report dated March 7, 2014, the social worker indicated that mother, as part of her substance abuse program, completed 12 of 24 individual interviews, 12 of 24 education groups, and seven of 24 required 12-step meetings. Mother drug tested negative seven times during the reporting period. She had attended individual counseling. Mother had yet to enroll in a domestic violence program.

---

[3] A letter from MGGM filed September 5, 2014, reflected minor had only lived outside MGGM's home from July 16, 2012, to August 24, 2013, though not necessarily indicating minor was not in mother's custody when living with MGGM.

[4] The amended petition removed only the allegation that marijuana cultivation had been conducted inside the residence. It was now alleged the cultivation occurred in the garage.

Mother visited with minor a minimum of two hours weekly, sometimes spending the night at MGGM's residence. MGGM did not like mother spending the night as MGGM felt mother used it as an opportunity to do laundry and as a place to stay. Mother "indicated that she needs help with housing and childcare if [minor] is to be returned to her."

The social worker wrote that minor could not be returned to mother's custody because mother had not completed her case plan and "does not have a stable home and continues to go back and fo[]rth between the two men that she was using [drugs] with and arrested with." "In regards to the mother, she continues to have unstable housing, as she is going back and fo[]rth between her boyfriend[']s home and the home of the father . . . ." The social worker again indicated as part of mother's case plan that she "will obtain and maintain a stable and suitable residence for herself."

At the March 20, 2014, six-month review hearing, the court authorized the matter transferred to Los Angeles County "once mom has a stable residence. She is attempting to get her own place." The court continued mother's reunification services.

In the 12-month review report filed September 10, 2014, the social worker recommended mother's reunification services be terminated: "During this six month reporting period [mother] continues to not have a stable permanent residen[ce]. Initially she was staying with her boyfriend, . . . and his mother half the week and with [minor's] father, . . . and his mother the other part of the week. Then she was staying with a female friend and her infant son. Now she is living with her new boyfriend . . . and they are living at random residences since he was evicted from his apartment." Mother "indicated

5

that her new boyfriend . . . is receiving unemployment and they are trying to save up for a deposit for their own apartment."

Mother completed her substance abuse program, which required 24 individual interviews, 24 education groups, 24 12-step meetings, and random drug screens. She completed the program on May 12, 2014, but did not get a certificate of completion due to her failure to pay the program $71.00. Mother had also completed four parenting classes and had participated in individual counseling. Nevertheless, she had still failed to enroll in a domestic violence program.

The social worker noted mother "has not shown stability in her housing and continues to reside with various friends during this six month reporting period. She also was just fired from her job and is not financially able to take care of her son." The social worker's service log reflects mother and the new boyfriend "are currently staying with friends and a motel as he was evicted from his apartment."

On September 22, 2014, the initial date set for the 12-month review hearing, mother's attorney stated mother "did do a parenting and a domestic violence class on-line. We know that that's not completely what the Department wants, but she is attempting to do her program." The court ordered mother complete a hair follicle drug test pursuant to mother's attorney's request.

In an addendum report filed October 6, 2014, the social worker noted a misdemeanor warrant for mother's arrest had issued on June 17, 2014, for being under

6

the influence of a controlled substance.[5]  The social worker observed mother "continues to have unstable housing living with various friends and now with a new boyfriend." Mother completed a four hour parenting education class and four hour domestic violence program.  Nevertheless, "The Department feels that [mother] would benefit from a more intense domestic [v]iolence program as she continues to get into relationships that are not healthy for her son to be returned to."

At the hearing on October 9, 2014, it was noted mother had bleached her hair which interfered with the result of her hair follicle drug test.  The court continued the matter for mother to complete another hair follicle drug test.

At the 12-month review hearing on October 22, 2014, mother's counsel reported mother's hair follicle drug test was negative.  Mother's counsel observed mother "had[ not] had real stable housing, but since August she has been residing in Covina.  She's been very fortunate to be able to reside in a home which allows her to be in programs." Mother's counsel further noted mother "did on her own behalf go and do parenting and a [domestic violence] class online, even though the Court or the Department may not find that to be sufficient, it is showing that mother is trying to complete or at least abide by the objectives of her case plan.  Mother was able to enroll in a parenting and a [domestic violence] class.  One is for 16 weeks and the other is for 12.  That would be the parenting. I did show the court that."

---

[5]  It is unclear from the record whether this warrant was based on mother's arrest in the initiating incident of the instant juvenile proceedings or was the result of a subsequent arrest.

7

Minor's counsel stated, "I know that . . . in chambers, it sounds as though the intention would be to give mother some more services . . . . So I'll submit." The court found mother filed a notification of mailing, which indicated her city of residence was Covina, making her a resident of Los Angeles County. The juvenile court further found the department had complied with the case plan and mother had made moderate progress but return of minor would put him at substantial risk of detriment. Nevertheless, the court stated mother has "made quite a bit of progress, and we are very close to the 18-month date. So the Court will continue Family Reunification services for mother."

In the 18-month status review report filed February 9, 2015, the social worker again recommended mother's reunification services be terminated. The result of mother's hair follicle drug test reported on October 22, 2014, was negative. Mother completed a parenting education program on September 19, 2014. She enrolled in individual counseling on December 27, 2014; had three sessions; and, according to her therapist, had "been motivated and cooperative with her goals." Mother completed a four hour domestic violence program. Mother visited minor four hours on Saturdays or Sundays.

Nonetheless, "mother has indicated that she needs help securing appropriate housing." The social worker observed, "During this reporting period [mother] continues to not have a stable permanent residen[ce] that is appropriate to have her son live with her. [Mother] and her boyfriend . . . are living with the family of one of his friends, but they have to move out. They have been looking for an apartment but have not found anything due to [boyfriend] having an eviction on his record. [Mother] has been working

8

with Farmers Insurance since mid November 2014.  On January 16, 2015[,] she [started] working full time 9-5pm [sic] Monday thru [sic] Thursday.  She makes $9 an hour and gets bonuses and commission.  She is also receiving $176 in food stamps."  Mother's therapist's "only concern that she has about returning [mother's] son to her is that she does not have an appropriate home for him at this time."

The social worker's case log entry for January 29, 2015, reads, "I spoke with the mother, I again told her that due to [minor] not having an appropriate home that my report is saying [sic] to terminate services and go adoption, but if she should get something before we go to Court that I could do a home evaluation and submit an addendum to change the recommendation."  The social worker concluded, "In regards to the mother, she has had 18 months of services and just now is starting to make some positive changes, by participating in serv[ic]es and obtaining full time employment.  She continues to have unstable housing.  The child . . . deserves to be in a loving home that is able to provide him with the stability and emotional support that he deserves."

In an addendum report filed March 16, 2015, the social worker noted, "On March 12, 2015, I spoke with [mother's] therapist . . .; she indicated that [mother] is doing well in therapy.  She is responsible and makes it to her appointments weekly.  In therapy they continue to work on domestic violence in regards to control issues, impact on her child[,] and how her new relationship may affect her child."  "They are also working on parenting issues and concerns that [mother] might have about parenting her child since he has been out of her care for the past 19 months.  The only continued concern that she has about returning [mother's] son to her is that she does not have an appropriate home for him to

9

return to." Mother completed another hair follicle test on March 6, 2015; the result was negative for drugs.

The social worker concluded, "To date[,] [mother] has not been able to secure appropriate housing. She continues to turn in applications for apartments that she can afford, but they end up going to other applicants." "Although the mother has had a year and [a] half to secure appropriate hosing and show that she is ready to have her son back, she has yet to do so."

At the 18-month review hearing on March 19, 2015, minor's counsel agreed with the social worker's recommendations: "I think the Department has been a little bit hesitant to place because we weren't sure whether or not mother was going to be able to completely stabilize and put herself in a position to have [minor] back . . . ." Mother's counsel noted, "Her biggest problem is stability in having her own residence. She's been trying very hard to get her own place, or at least a rental or renting a space in somebody's home. That's her next avenue. She has not been able to get in an apartment. She's been denied each and every time."

The juvenile court found a substantial risk of detriment to minor if returned to mother's custody and found the department had complied with the case plan. The court noted, "Mother's progress has been adequate, but incomplete. Reunification services, though, are terminated for mother." The court set the section 366.26 hearing.

### DISCUSSION

Mother contends insufficient evidence supports the finding that reasonable services were provided by the department to mother with respect to housing.

10

Furthermore, mother contends insufficient evidence supports the juvenile court's determination that return of minor to mother's custody would put him at substantial risk of detriment. We agree with mother that substantial evidence fails to support the juvenile court's finding that the department provided reasonable services with respect to housing.

"Until reunification services are terminated, there is a statutory presumption that a dependent child will be returned to parental custody. [Citation.] As relevant here, section 366.22, subdivision (a) requires the juvenile court at the 18-month review hearing to return the child to the custody of the parent unless it determines, by a preponderance of the evidence, that return of the child would create a substantial risk of detriment to the child's physical or emotional well-being." (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1400.)

"That standard, while vaguely worded to be sure, must be construed as a fairly high one. It cannot mean merely that the parent in question is less than ideal, did not benefit from the reunification services as much as we might have hoped, or seems less capable than an available foster parent or other family member." (*David B. v. Superior Court* (2004) 123 Cal.App.4th 768, 789 [Fourth Dist., Div. Three].) "At the 18-month review hearing, the court may continue the hearing under section 352 if it finds that reasonable family reunification services have not been offered or provided to the parents. [Citation.]" (*Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1424.)

"We review the evidence most favorably to the prevailing party and indulge in all legitimate and reasonable inferences to uphold the court's ruling. [Citation.] '"Substantial evidence" is evidence of ponderable legal significance, evidence that is

11

reasonable, credible and of solid value. [Citations.]' [Citation.] 'Inferences may constitute substantial evidence, but they must be the product of logic and reason. Speculation or conjecture alone is not substantial evidence. [Citations.]' [Ciation.]" (*Tracy J. v. Superior Court*, *supra*, 202 Cal.App.4th at p. 1424.)

If the social worker contends a parent's failure to provide suitable housing forms the basis for a determination not to return a minor to a parent's custody, the social worker must establish the department provided reasonable services directed at helping the parent ameliorate the problem. (*In re P.C.* (2008) 165 Cal.App.4th 98, 106 [Fourth Dist., Div. Three] [Inadequate services provided where the department failed to timely acquire mother's signature on referral for placing mother higher on low income housing list and simply recommended mother look in the Pennysaver for housing]; *In re G.S.R.* (2008) 159 Cal.App.4th 1202, 1215-1216 [The department must provide housing assistance where needed as part of reunification services.]; *David B. v. Superior Court* (2004) 123 Cal.App.4th 768, 793, 795 [Fourth Dist., Div. Three] [The department's provision alone of "some generic advice concerning the need for housing, along with a list of referrals" "was insufficient as a matter of law" for a determination at the 18-month hearing that services were appropriate.]

Here, like the parents in *David B.* and *P.C.*, mother "did virtually everything [the department] requested of [her], and then some." (*David B.*, *supra*, 123 Cal.App.4th at p. 772.) "[M]other resolved those problems, and the later findings of detriment were based solely on mother's inability to find suitable housing." (*In re P.C.*, *supra*, 165 Cal.App.4th at p. 106.) Mother drug tested negative at least 10 times, every time

12

demanded of her, during the entire pendency of the juvenile proceedings. She completed a substance abuse treatment program requiring that she participate in 24 individual interviews, 24 education groups, 24 twelve-step meetings, and random drug screens.

Mother attended individual counseling. Mother completed parenting and domestic violence classes. When the social worker indicated a belief that mother would benefit from a more "intense" domestic violence program, mother enrolled in additional 16-week parenting and 12-week domestic violence classes. She completed the subsequent parenting class and enrolled in additional individual counseling. In the additional, weekly individual counseling, mother and her therapist worked on parenting and domestic violence issues. Mother's therapist reported mother was doing well and was "motivated and cooperative with her goals." At the 12-month review hearing, the juvenile court found "mother has made quite a bit of progress . . . ."

The only area where the department and the juvenile court found mother failed to make progress was in obtaining stable, suitable housing. However, mother informed the social worker, as early as the preparation of the jurisdiction and disposition report filed on September 16, 2013, and on other occasions, that she needed help obtaining stable housing. The social worker noted in the initial case plan and every subsequent report, the need for mother to obtain suitable housing. Likewise, the juvenile court recognized the need for mother to obtain "a stable residence." Mother therapist's *only* concern was that mother did not have an appropriate home for minor. Nevertheless, the department never acknowledged any agency responsibility or actually offered any help to mother in obtaining such housing.

13

The Department "might have assisted [mother] to obtain affordable housing, but made no effort to do so." (*G.S.R.*, *supra*, 159 Cal.App.4th at p. 1213.) "[T]he dependency system *pays* foster families to help defray the cost of children placed in their care, and subsidizes adoptive assistance payments until children reach majority. . . . It makes no sense for the government to subsidize the care of a child by relatives or strangers but not his [mother], even though the sole impediment to placing the child in that parent's custody is the parent's dire financial condition." (*Id.* at p. 1215, italics added.) "Here, there was no evidence which would have allowed the court to conclude [the department] had provided [mother] with sufficient assistance to reasonably address its concerns about [her] housing." (*David. B.*, *supra*, 123 Cal.App.4th at p. 795.) Insufficient evidence supports the juvenile court's determination the department offered reasonable services.

With respect to the juvenile court's finding of a substantial risk of detriment in returning minor to mother's custody, we acknowledge that housing issues cannot be the only evidentiary basis to support such a finding. Nonetheless, the social workers' reports repeatedly reflected mother moved from home to home, often simply staying at an individual's home for a single night. Two of the men with whom mother had been living were individuals with whom she had used drugs and with whom she had been arrested. Mother was staying in a motel at one point. This is sufficient evidence from which the juvenile court could have determined it would be detrimental to return minor to mother's custody. Nevertheless, the juvenile court must ensure that the department has provided

14

reasonable services to mother to ameliorate the basis for any finding of detriment, here, mother's inability to obtain suitable hosing.

DISPOSTIION

We reverse the juvenile court's orders denying mother reunification services and scheduling the section 366.26 hearing. We remand the matter with instructions that the court consider the mother's housing situation at the time of the hearing on remand when determining whether minor would be placed at substantial risk of detriment in returning him to mother's custody. If the juvenile court makes such a finding of detriment, the court shall order an additional six months of reunification services for mother during which the department shall be directed to proffer services aimed at helping mother obtain suitable housing. (*In re P.C.*, *supra*, 165 Cal.App.4th at pp. 100, 108; *David. B.*, *supra*, 123 Cal.App.4th at p. 774; *G.S.R.*, *supra*, 159 Cal.App.4th at pp. 1215-1216.) "If, after the provision of such services, [mother] is still unable to provide [minor] with a suitable residence, the court may reissue the order terminating services and schedule the permanency hearing, or make any other order appropriate to the circumstances at that time." (*David B.*, at pp. 774, 798; *In re P.C.*, at p. 108.)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

KING
J.

CODRINGTON
J.

15