Filed 5/29/29  V.C. v. Superior Court CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| V.C., | C102794 |
| Petitioner, | (Super. Ct. No. JD242561) |
| v. | |
| THE SUPERIOR COURT OF SACRAMENTO COUNTY, | |
| Respondent; | |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES et al., | |
| Real Parties in Interest. | |

Petitioner is the father of dependent minor V. (age 6) and the minor's sibling C. (age 17), who is not the subject of this writ proceeding.  Petitioner seeks an extraordinary writ to vacate the orders of respondent Sacramento County Superior Court (juvenile court) terminating his reunification services and setting a hearing pursuant to Welfare and

1

Institutions Code[1] section 366.26.  (Cal. Rules of Court,[2] rule 8.452.)  Petitioner contends the juvenile court erred in finding return of V. to his care and custody would subject V. to a substantial risk of detriment.  (§ 366.21, subd. (f)(1).)  We stayed the section 366.26 hearing in the respondent juvenile court pending resolution of this writ petition.

We previously notified the parties we would resolve this matter without oral argument unless any party timely objected.  Having received no objection, we now issue the writ with directions.

### FACTUAL AND PROCEDURAL BACKGROUND

In March 2023, V. and his sibling were removed from petitioner's custody in Santa Cruz County due to petitioner's substance abuse.  The Santa Cruz County Superior Court took jurisdiction over the children, placed them with maternal relatives, and ordered reunification services for petitioner.  Petitioner moved to Sacramento and the matter was then transferred to Sacramento County.  Over the course of the next 13 months, petitioner completed his court-ordered services, working with real party in interest the Sacramento County Department of Child, Family and Adult Services (Department).

By the time of the 12-month review hearing on August 15, 2024, petitioner had been testing negative for controlled substances for approximately seven months, had completed his case plan services, and was living with his girlfriend and her four children.  Despite his seven months of sobriety and his completion of services, the Department expressed concern about his ability to complete his treatment objectives, meet V.'s needs, and provide for V.'s safety, protection, and well-being.  There were no concerns expressed about petitioner's current sobriety.  Nor were there any concerns expressed

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

[2]     Undesignated rule references are to the California Rules of Court.

about his living situation and current relationships with his girlfriend as well as her children.

The juvenile court terminated petitioner's reunification services and set the matter for a section 366.26 hearing. The court adopted the Department's recommended findings and orders, which included a finding by a preponderance of the evidence that return of V. to petitioner's physical custody "would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the [minor]." (§ 366.21, subd. (f)(1).)

Petitioner sought extraordinary writ review of respondent juvenile court's detriment finding. We concluded respondent juvenile court's findings were inconsistent and lacked sufficient factual bases and issued a preemptory writ of mandate directing respondent juvenile court to vacate its August 15, 2024 findings and orders and to conduct a new hearing and enter appropriate findings and orders on any and all evidence up to the date when the new hearing was held. Accordingly, respondent juvenile court held a new 12-month review hearing on December 17, 2024, and on December 20, 2024, and again terminated petitioner's reunification services and set the matter for a section 366.26 hearing, once more finding by a preponderance of the evidence that there was a substantial risk of detriment if V. were returned to petitioner's physical custody.

This is the second time we have been called upon to review rulings by respondent juvenile court in this matter, as petitioner now seeks extraordinary writ review of respondent juvenile court's December 20, 2024 detriment finding. Petitioner argues the juvenile court again erred in finding a substantial risk of detriment to V.'s physical or emotional well-being if returned to petitioner. As we explain, there was insufficient evidence of a substantial risk of detriment to V. We therefore issue the writ with directions.

## DISCUSSION

Section 366.21, subdivision (f)(1) provides in relevant part that, at the permanency hearing, the juvenile court "shall order the return of the child to the physical custody of

their parent . . . unless the court finds, by a preponderance of the evidence, that the return of the child to their parent . . . would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." If the child is not returned to their parent, "the court shall specify the factual basis for its conclusion that the return would be detrimental." (§ 366.21, subd. (f)(2).) We review the juvenile court's detriment finding for substantial evidence, resolving all conflicts in support of the juvenile court's order. (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1400-1401.)

Here, the Department expressed concern that petitioner was not able to provide for or understand V.'s need to feel safe, protected, and secure. Respondent juvenile court concluded that, although petitioner satisfactorily addressed his substance abuse issues, there was nonetheless a preponderance of evidence of a substantial risk of detriment to V.'s emotional well-being if returned to petitioner. In so finding, respondent juvenile court noted V. did not want to return to petitioner or meet petitioner's girlfriend or her children; petitioner was not actively involved in supporting mental health or educational services for V. or offering a plan for supporting those services if V. were returned to him; and transitioning V. to a new household with petitioner's girlfriend and her children "would be emotionally difficult" for V.

Petitioner contends respondent juvenile court's detriment finding is not supported by substantial evidence because he successfully addressed the substance abuse problems that led to V.'s removal, has a grasp of the important parenting concepts, and does not present a substantial risk to V.'s physical or emotional well-being. The Department, however, maintains respondent juvenile court's finding of substantial risk of detriment finds sufficient support in the record. We agree with petitioner that insufficient evidence supports respondent juvenile court's finding.

First, the Department argues substantial risk of detriment was evidenced by V.'s therapist, who expressed the opinion through the social worker's report, produced on the evening before the second hearing in this matter, that it would be "emotionally

4

detrimental" for V. to leave his caregivers, whom he identified as his family and to whom he was bonded.[3] The therapist further reported that minor did not identify positive memories associated with petitioner and felt rejected and abandoned because petitioner had " 'another family.' " When unpacked, the concern seems to stem primarily if not completely from V.'s satisfaction with his current placement. Our Supreme Court has held that "the existence of a successful relationship between a foster child and foster parent cannot be the sole basis for terminating parental rights or depriving the natural parent of custody in a dependency proceeding." (*In re Jasmon O.* (1994) 8 Cal.4th 398, 418.) V.'s therapist provided no evidence or even an opinion that placing him with petitioner would place V. at *substantial* risk of detriment to V.'s physical or emotional harm.

Next, the Department argues petitioner's irregular visitation caused V. emotional harm because petitioner failed to develop a bond with V. and failed to demonstrate he was committed to helping V. feel safe and secure in petitioner's care. The Department argues V.'s desire to stay in his current placement increased due to petitioner's repeated attempts to introduce V. to petitioner's girlfriend and her children, despite being admonished that he should move more slowly in introducing the families to each other, resulting in V. feeling rejected and abandoned by petitioner in favor of petitioner's new family. But, as the Department implicitly acknowledges, the minor's dislike of father's situation and reluctance to blend families is not sufficient to show detriment. "A child's dislike of a parent's living arrangement, without more, does not constitute a substantial risk of detriment." (*In re Yvonne W.*, *supra*, 165 Cal.App.4th at p. 1401.) Further, it is clear from the record that V. has been refusing visits in large part at the urging of his 17-year-

---

[3] We note that the social worker's reporting of the therapist's concern was accepted over petitioner's objection to the late notice and the therapist's unavailability to testify and be cross-examined to flesh out these reported concerns.

old sister, C., who testified at the latest hearing to that effect, indicating she and V. had not visited with father in Sacramento because she "felt like if [they] were to come down here, [she] had a feeling that [petitioner] was going to bring his girlfriend." She also testified as to V's reason for not wanting to live with father: "[T]he only thing he always says is that he doesn't want to return because of [father's] girlfriend." She was unable to articulate anything about V's potential healthcare, school, or safety with father that concerned her, indicating, "I think everything is good."

The record does not contain evidence that petitioner is either a physical or emotional danger to V., nor that petitioner's girlfriend is a physical or emotional danger to V. What is clear from the record is that neither V. nor C. have any desire to meet or interact with the girlfriend or her children. And although petitioner has inelegantly and perhaps unwisely and at times contrary to the social worker's direction tried to introduce his girlfriend and her family to his, such attempts do not prove a substantial risk of detriment to V. Certainly these issues regarding blending families would not constitute separate grounds for removal from father, had they arisen in a different context. Notably, the Department offered no services to facilitate the blending of the two families.

The Department also argues that petitioner, who communicates through an interpreter, failed to sufficiently engage in V.'s mental health services and education needs, did not appreciate or understand V.'s need for services to maintain his emotional well-being, and was "quite nonchalant" about V.'s needs when he testified he did not know which therapist V. would see upon his return to parental custody but "it would be fine." However, while petitioner's level of engagement may have been less than the Department had hoped,[4] petitioner acknowledged in his testimony that V. would need

---

[4]     The Department's perception of petitioner's "nonchalant" attitude toward V.'s present and future mental health and educational needs may have been a consequence of

6

continued mental health services and assured the juvenile court that he would find the appropriate provider and would enroll V. in the bilingual school attended by his girlfriend's children. He also confirmed his willingness to participate in therapy with both V. and C.[5] Thus, while petitioner's future plans for V.'s mental health and educational services were somewhat uncertain, he did not reject the need for such services or otherwise provide cause to believe V. would be at substantial risk of harm from any deprivation of the necessary services.

It is oft cited and universally agreed that "[t]he goal of dependency court proceedings is not to engineer perfect parents, but to protect children from harm." (*In re J.M.* (2020) 50 Cal.App.5th 833, 848.) "In applying this standard, the juvenile court should consider only whether the parent shows a 'grasp of the important parenting concepts—things such as a child's need for security, adequate nutrition and shelter, freedom from violence, proper sanitation, healthcare, and education.' " (*In re E.D.* (2013) 217 Cal.App.4th 960, 965.) Here, petitioner exhibited a grasp of the important parenting concepts, an intent to provide for all of V.'s needs, and a willingness to accept help to accomplish that goal.

We noted in our previous opinion that "the only evidence apparent from the record is that V. expressed no concerns about return to father and wanted to return home." (*V.C. v. Superior Court* (Nov. 27, 2024, C101867) [nonpub. opn.].) Apparently, with the passage of time and the continued presence in petitioner's life of his girlfriend and her children, V. is now concerned about that other family in petitioner's life and what it

---

the language barrier. Further, petitioner was not provided with a Spanish-speaking social worker until very late in the proceedings.

[5] We note that petitioner was living in a different county than where the minor was placed and the minor would, therefore, need a referral to a new therapist from the Department prior to making any specific arrangements. Thus, the Department's criticism of the fact that petitioner did not have a new therapist identified is not well taken.

means to V., and he wants to stay in his current placement. This is understandable. But it does not constitute a substantial risk of detriment and is not a valid reason to deny return.

The current situation is unfortunate and complex. Given V.'s current opposition to meeting petitioner's girlfriend and her children, an interim plan with the clear goal of V.'s physical return to father and involving therapeutic counseling would, at the very least, seem advisable in order to effectuate a gradual and successful transition of V. to petitioner's care.

We conclude there was insufficient evidence to support respondent juvenile court's finding that return of V. to petitioner's custody would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of V. (§ 366.21, subd. (f)(1).) An order returning V. to father, with transitional and supportive services, is warranted. In the event that circumstances regarding detriment change in a manner that arguably supports V.'s re-removal from father, there are requests and procedures available to the parties and the juvenile court to ensure that these circumstances and their effect on V.'s best interests are adjudicated promptly.

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent juvenile court to vacate the December 20, 2024 order terminating petitioner's reunification services and setting the matter for a section 366.26 hearing. Respondent juvenile court is further directed to enter new orders directing return of the minor to petitioner, with ample transitional time and family maintenance services designed to address the concerns surrounding reunification expressed by the Department and the juvenile court. This decision is final forthwith as to this court. (Rule 8.490(b)(2)(A).) The stay previously issued by this court on February 3, 2025, is vacated upon finality of this opinion.

/s/_____
ROBIE, Acting P. J.

We concur:

/s/_____
DUARTE, J.

/s/_____
KRAUSE, J.