Filed 8/12/25  In re N.C. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re N.C. et al., Persons Coming Under the Juvenile Court Law. | H052794 (Santa Cruz County Super. Ct. Nos. 23JU00145, 23JU00146, 23JU00147) |
| SANTA CRUZ COUNTY HUMAN SERVICES DEPARTMENT, Plaintiff and Respondent, v. N.L., Defendant and Appellant. | |

Mother N.L. appeals the juvenile court's six-month status review orders extending services and delaying reunification based on its findings that mother had made minimal progress in her case plan and that return of her youngest child still carried a substantial risk of detriment.  For the reasons explained here, we will affirm the orders.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

The juvenile court ordered mother's three children, N.C. (born 2009), No.L (born 2010), and N.N. (born 2015), detained and placed with their grandmother after N.C. was

---

[1]  This case has a long history, some of which is detailed in our unpublished opinion in mother's earlier appeal of the jurisdiction and disposition orders.  (*In re Ne.L. et al.; Santa Cruz County HSD v N.L* (Dec. 11, 2024, H052009).)  We recite only the factual and procedural background from our earlier opinion necessary to resolve the issues in this appeal.

found with bruising to her eyes and a hematoma on her head in December 2023. Mother had a history of mental illness and methamphetamine use. By the time of the contested jurisdiction and disposition hearing in April 2024, the Santa Cruz County Human Services Department had filed four amended petitions. The juvenile court sustained three of the four counts in the amended petitions, declared the children dependents of the court, and removed the children from mother's custody. The court ordered continued visitation for mother and ordered her to participate in the Department's recommended case plan, which included a psychological evaluation, a substance use disorder assessment, counseling, and random drug testing.

## A. PROGRESS BEFORE THE SIX-MONTH REVIEW HEARING

### 1. Mother's Psychological Evaluation and Counseling

Mother completed the psychological assessment and was diagnosed with generalized anxiety disorder. Her responses in the evaluation demonstrated characteristics such as grandiosity, defensiveness, and difficulty with emotional regulation but also the ability to think about complex issues. The court granted the Department's request to add the doctor's recommendations to the case plan. The updated case plan required mother to complete individual and family therapy, attend parenting classes, and obtain housing support and substance use treatment.

According to the Department's six-month status review report, mother demonstrated minimal change in her behavior and she continued to struggle with mental health symptoms. She cancelled all individual counseling appointments with her assigned parent counselor due to her desire to pursue counseling through Kaiser in San Mateo County. Mother continued to hold beliefs of unconfirmed celebrity connections: She had previously driven the family to Salinas overnight to meet Marshall Mathers (the artist Eminem), who was not there. She also wished to provide the court with a character reference from Eminem but never produced one. Mother believed the dependency was the result of the Department, the police, and her mother working together with her father

2

Denzel Washington to conceal that she is his child out of wedlock. The Department concluded the risk of returning the children to mother's care was high and recommended mother continue to receive reunification services up until the twelve-month hearing date.[2]

The Department submitted an updated status report after an unsuccessful settlement conference. Mother had attended one virtual individual counseling session and had confirmed that she would attend an online parenting class, although the Department did not receive completion verification. Mother continued to deny any mental health issues and refused to change insurance or explore options to assist with her mental health. She still believed that she was the child of Denzel Washington, that the dependency proceeding was the result of a larger conspiracy, and that the government was targeting her and bribing her children. She also believed N.C. was lying and conspiring with the grandmother to keep the children out of her care. The Department acknowledged mother had many strengths but opined that mother had not made progress in overcoming the mental health issues that led to the dependency proceeding.

### 2. Visitation and Relationships with the Children

During the six-month review period, N.C. declined to attend visits with mother. No.L. stated that mother blamed N.C. for bringing their family to the Department's attention. No.L. enjoyed his routine visits with mother but occasionally refused to see her because he felt she hurt his sister and favored his younger brother.

Mother's visits with N.N. were consistent and engaging. Mother provided N.N. with expensive gifts during the visits and relayed messages about his two siblings, once informing N.N. that his older sister was the reason he was not with mother. After visits with mother, N.N. would sometimes lash out and try to break things if he did not get his way. Mother voiced concerns about N.N.'s safety while in the grandmother's care. She

---

[2] The Court Appointed Special Advocates (CASA) of Santa Cruz County recommended N.N. remain in the home of his grandmother and continue visits with his mother.

alleged the grandmother's house had mold and was making everyone sick, but the Department never observed mold during visits. Mother also reported the older children were bullying N.N., but N.N. refuted any bullying and reported he liked living with his grandmother. According to the Department's updated status report, N.N. was hesitant to inform his mother about his desires because he feared he would upset her. After one missed visit, N.N. refused to talk to mother on the phone, and mother called for a welfare check on the grandmother's home. Law enforcement had to wake N.N. and question him.

### 3. Substance Use Disorder Assessment, Drug Testing, and Housing Support

Mother completed her substance use disorder assessment and required no treatment. Although mother tested negative for substances other than marijuana, she missed most of the required drug tests and failed to complete a hair follicle test to reduce her testing frequency. Mother had a history of moving, but by the time of the six-month status review, the Department's updated report noted mother had secured housing in San Mateo.

### B. THE SIX-MONTH REVIEW HEARING

The juvenile court conducted a two-day six-month review hearing in September 2024, which mother attended. She testified about making progress in her case plan by participating in a psychological evaluation, completing a substance use disorder assessment, and obtaining stable housing in San Mateo County. Mother stated she had been attending individual therapy sessions for six weeks and was learning how to practice patience and speak up in a non-harmful manner. She explained she did not attend counseling when first referred by the Department because she was moving to another county to escape bullying by the Department and community in Santa Cruz. Mother had also completed a parenting class consultation by the time of the hearing. She testified the online parenting class recommended by the Department did not exist outside of Santa

4

Cruz County but stated she was exploring other options for which she was planning to pay out of pocket.

Mother asked that N.C. and No.L. be returned to her care only if they so wanted. She believed N.C. was refusing to attend visits due to N.C.'s age and ego but testified that N.C. had recently given her a hug and that she was open to attending visits and therapy with N.C. Mother believed her visits with No.L. and N.N. went well, and felt she was ready for unsupervised visits with both children. She denied having inappropriate conversations with N.N. regarding his siblings and believed N.N.'s anger issues stemmed from his separation from her. She explained that she called for a welfare check on N.N. because the grandmother had blocked her number for a week and she could not reach the children on their cell phones. Mother planned to continue participating in her case plan if her children were returned to her.

The juvenile court determined by a preponderance of the evidence that the children's return to mother would create a substantial risk of detriment to their safety and well-being because mother had made only minimal progress toward alleviating or mitigating the causes necessitating placement in foster care. The court acknowledged that some progress was being made as mother had submitted to drug testing, acknowledged her mental health diagnosis, engaged in positive family visits, participated in the children's education and medical decisions, and "created a plan for her future with her children." But mother had started therapy only five or six weeks before the hearing and had only recently obtained housing.

The juvenile court ultimately determined that mother's progress was minimal and insufficient to ensure the children's safe return. It ordered that the children continue as dependents of the court and that family reunification services continue, and it set a twelve-month review hearing. (The juvenile court also granted mother's request to transfer the matter to San Mateo County, an issue not raised in this appeal.)

Mother timely appealed.

5

## II.    DISCUSSION

A dependent child must be returned to the physical custody of their parent at the six-month status review hearing unless the juvenile court finds by a preponderance of the evidence that return would create a substantial risk of detriment to the child's safety, protection, or physical or emotional well-being.  (Welf. & Inst. Code, § 366.21, subd. (e)(1).)  Here, the juvenile court found that mother had made minimal progress on her case plan and that return of N.N. to her care presented a substantial risk of detriment.[3] Mother argues both findings are erroneous.

### A. FINDING OF MINIMAL PROGRESS

We review the minimal progress finding for substantial evidence.  (See *J.H. v. Superior Court* (2018) 20 Cal.App.5th 530, 535 (*J.H.*).)  Evidence is substantial if it is " 'reasonable, credible and of solid value.' " (*Tracy J. v Superior Court* (2012) 202 Cal.App.4th 1415, 1424.)  "We resolve all conflicts in favor of the court's determinations, and indulge all legitimate inferences to uphold its findings.  [Citation.]" (*J.H.*, at p. 535.)  It is the appellant's burden to establish the evidence is insufficient to support the juvenile court's findings.  (See *In re A.G.* (2017) 12 Cal.App.5th 994, 1001.)

Because of mother's history of mental health and emotional regulation issues, her case plan required her to participate in psychological and substance use disorder assessments, drug testing, and counseling.  She was also to complete individual and family therapy, attend parenting classes, and obtain housing assistance and substance abuse treatment.  Mother argues she made more than minimal progress on her case plan by completing the psychological and substance use disorder assessments, securing housing, maintaining appropriate visits with her sons, beginning individual therapy, and informing the Department of her participation in parenting education.  She argues she

---

[3]  Mother confirmed in her opening brief that she challenges only the detriment finding as to N.N.

6

was not in full compliance with counseling because she had trouble accessing mental health services due to her move.

Substantial evidence supports the juvenile court's finding that mother was failing to take responsibility for her mental health treatment and had made minimal progress in her case plan. (See *J.H.*, *supra*, 20 Cal.App.5th at p. 535.) Although mother completed the psychological and substance use disorder assessments, she missed most of her required drug tests and did not take a hair follicle test to reduce her testing frequency. Mother claimed she was no longer required to test after her substance use disorder assessment and because she had moved to San Mateo County, but the record does not reflect those changes to her case plan. Mother completed only about six weeks of individual therapy in the months leading up to the hearing. She did not attend parenting classes despite the Department's referrals for online classes, and testified she was pursuing an individualized parent coaching program in San Mateo County. Mother also testified that she was Denzel Washington's daughter and that she was being bullied by the Department and the Santa Cruz community because of several anonymous reports to child protective services. She described being harmed because the anonymous reports were investigated regardless of their falsity, but she did not express an understanding about the reasons the reports were made. And after a history of moving, she obtained permanent housing only a few weeks before the six-month hearing.

## B. FINDING OF SUBSTANTIAL RISK OF DETRIMENT

Mother argues the juvenile court refused to return N.N. to her care based on an erroneous detriment finding. Importantly, we begin by observing that the substantial risk standard does not mean " 'the parent in question is less than ideal, did not benefit from the reunification services as much as we might have hoped, or seems less capable than an available foster parent or other family member.' [Citation.]" (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1400 (*Yvonne W.*).) The standard requires a more particular showing that "returning a child to parental custody represents some danger to the child's

physical or emotional well-being. [Citations.]" (*Ibid.*) We review that determination for substantial evidence. (*Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 763 (*Angela S.*).)

The record shows mother failed to regularly participate in the therapeutic portions of her case plan designed to address the reasons the family entered the dependency system, namely her issues with mental health and emotional regulation. (See *In re Dustin R.* (1997) 54 Cal.App.4th 1131, 1141–1142 (*Dustin R.*).) In the five months following the April jurisdiction and disposition hearing, mother completed about six weeks of individual therapy, attended no parenting classes, and continued to express beliefs of being targeted by the Department or others, without demonstrating insight into her personal behaviors and actions. Mother's failure " 'to comply with material aspects of the service plan … [was] enough to support a finding of detriment.' " (*M.G. v. Superior Court* (2020) 46 Cal.App.5th 646, 660.)

Mother contrasts her situation to the one in *J.H.* The *J.H.* court found substantial evidence supported termination of reunification services after the 12-month review hearing because the father was hostile toward social workers and denied a need for therapy to address his domestic violence history. (*J.H.*, *supra*, 20 Cal.App.5th at p. 535.) The father "neither made significant progress in resolving the problems that led to his daughters' removal from the home nor demonstrated his capacity to complete the objectives of the case plan." (*Ibid.*) Here mother argues she demonstrated an ability to utilize service providers, acknowledged the need to individually parent her children, maintained loving and appropriate visits with N.N., and confirmed she would continue to participate in services if N.N. was returned to her. But mother overlooks her lack of progress toward mitigating the mental health and emotional issues which led to N.N.'s removal from the home. (See *ibid.*; *Dustin R.*, *supra*, 54 Cal.App.4th at pp. 1141–1142.)

Despite having positive visits with N.N., aspects of mother's treatment of N.N. placed him at emotional risk. (See *Yvonne W.*, *supra*, 165 Cal.App.4th at p. 1400.) The

8

Department noted that mother shared with N.N. inflammatory messages regarding his older sister N.C. and provided him with expensive gifts, causing emotional distress among the siblings. Mother simply denied those statements and testified that N.C. does not visit her because of N.C.'s ego, illustrating her tenuous relationship with N.C. Mother made multiple unfounded allegations regarding N.N.'s living situation throughout the review period: She alleged the grandmother's house was moldy and was making everyone sick, which the Department did not find in its home visits; Mother reported the older children were bullying N.N., which N.N. refuted; Mother testified she called for a welfare check on the grandmother's home because she couldn't reach N.N., but the Department's report noted N.N. simply did not want to talk to his mother at the time and had informed her not to call authorities. According to the updated status report, N.N. hesitated to share his desires with his mother because he feared upsetting her.

Mother's love and affection toward N.N. during the review period is evident. But substantial evidence supports the juvenile court's finding that returning N.N. to his mother's care created a substantial risk of detriment to his emotional safety or well-being. (See *Angela S.*, *supra*, 36 Cal.App.4th at p. 763; *Yvonne W.*, *supra*, 165 Cal.App.4th at p. 1400.)

## III.    DISPOSITION

The orders from the six-month review hearing are affirmed.

_____

Grover, Acting P. J.

**WE CONCUR:**

_____

Lie, J.

_____

Rodriguez, J.*

H052794
_In re N.C. et al; Santa Cruz County HSD v. N.L._

_____

*Judge of the San Diego County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.