Filed 2/13/24  Alexia P. v. Superior Court CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ALEXIA P.,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF CONTRA COSTA COUNTY,<br><br>        Respondent;<br><br>CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU,<br><br>        Real Party in Interest. | A169432<br><br>(Contra Costa County<br>Super. Ct. No. MSJ21-00498) |

In this writ proceeding, petitioner Alexia P. (Mother) requests that this court vacate the juvenile court's December 2023 order setting a Welfare and Institutions Code[1] section 366.26 permanency planning hearing.  (Cal. Rules of Court, rule 8.452.)  She also requests a stay of the hearing and an increase in visitation.  We deny the petition.

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

1

BACKGROUND

In November 2021, a petition was filed by the Contra Costa County Children and Family Services Bureau (Bureau) pursuant to section 300, subdivision (b), relating to Mother's son N.J., born March 2020 (Minor). The petition alleged Mother failed to protect Minor due to a history of mental health issues, substance abuse, and domestic violence. Among other things, the petition alleged she was arrested earlier in the month for driving under the influence, child endangerment, and carrying a concealed weapon. Minor was detained, and Mother was granted supervised visitation two times per week.[2]

In March 2022, Mother admitted the allegations in the petition and the juvenile court sustained the petition with amendments. Mother agreed to undergo domestic violence, mental health, and substance abuse assessments, and to attend Alcoholics Anonymous or Narcotics Anonymous meetings.

The Bureau's April 2022 disposition report summarized Mother's child welfare system history involving her other children. The Bureau also reported on an interview with Mother, noting she was "emotionally volatile and scattered throughout." The Bureau reported that Mother had completed a parenting course and had numerous "appropriate and attentive" visits with Minor between November 2021 and April 2022. On the other hand, she missed ten drug tests. The Bureau concluded, "Despite the fact she refuses to acknowledge the need for domestic violence services, [Mother] has engaged partially in parenting education and counseling services. . . . [S]he never misses a visit with [Minor] and reports she will continue to fight to get [Minor] back." The Bureau recommended reunification services.

_____

[2] Minor's father is not involved in the present writ proceeding and we do not summarize aspects of the background relating to him.

2

At the April 2022 disposition hearing, the juvenile court adopted the Bureau's findings and recommendations. Mother's case plan included therapy, domestic violence counseling, parenting classes, drug testing, and participation in substance abuse treatment in the event of positive or missed tests.

The Bureau's October 2022 six-month review report stated that Mother was convicted in July of driving under the influence due to the November 2021 incident. She completed her parenting classes and made some progress on the mental health and domestic violence aspects of her case plan. Mother "consistently" participated in visitation and the visits went well. Mother missed six drug tests between May and September (testing negative four times). The Bureau recommended continuation of reunification services.

At the six-month hearing, the juvenile court granted the Bureau's request to change placement of the child to the home of the paternal grandmother, continued reunification services, and scheduled a 12-month review hearing.

The Bureau's February 2023 report for the 12-month review stated that Mother had made some progress on the therapy and domestic violence aspects of her plan. Mother and Minor had a "healthy and strong relationship." However, Mother "missed nearly every test date since October 2022." Mother claimed the Antioch testing location was incompatible with her San Francisco job location, but she objected to an offered testing site in San Francisco. The report also mentioned that Mother was seven months pregnant by a different father than Minor's father. The Bureau expressed concern about Mother's mental health and non-compliance with testing but recommended continued reunification services.

3

In an April 2023 report, the Bureau recommended termination of reunification services. The social worker reported that, when she tried to engage with Mother to encourage more progress, Mother "would get upset, yell . . . and not be receptive . . ." Following delays, a contested 12/18 month hearing commenced on June 15. A second hearing date was scheduled for June 29, and on that date the Bureau recommended a continuation of services until the 24-month date and the juvenile court adopted the Bureau's recommendation, setting a 24-month review hearing on October 26.

The 24-month review hearing was continued to December 2023, and, on October 26, the Bureau reported that Mother had been arrested in San Francisco while caring for her infant and Minor. The Bureau summarized the police report as follows. After 11 p.m. on September 8, police officers responded to a "wellbeing check on a female with two children that had fallen." The witness "stated that a woman had fallen over and appeared to be intoxicated and was with a two-to three-year-old child and a baby." Upon arrival, officers observed Mother seated on the northeast corner of the intersection of Liberty Street and Guerrero Street. Mother was holding a four-month-old infant (Minor's half-sibling), and Minor was standing next to her. One of the officers "smelled the strong scent of an alcoholic beverage emanating from [Mother]. He noticed that [Mother's] eyes were bloodshot and watery. In addition, he observed her speech to be thick and slurred. [Mother] attempted to regain her footing, but she had an unsteady gait and was unable to support herself . . . ." The officer "noted that northbound Guerrero St. had a moderate amount of vehicular traffic traveling at a high rate of speed, and [Mother] had no physical control or method of ensuring that [Minor] did not wander into traffic." She was arrested on, among other

things, two counts of child endangerment and one count of battery on a police officer (due to spitting in the face of an officer at the jail).

The Bureau interviewed Mother about the September 2023 arrest and Mother provided an account that was inconsistent with the police report and police video of the incident, claiming that she was confronted by the police as she walked back to her residence. The Bureau's report acknowledged Mother had participated in services but expressed concern "regarding the type of services that she has been enrolled in, her ability to take accountability in her own actions and her transparency with her service providers." She refused "to sign a full release with her therapist, which has essentially only allowed the therapist to provide positive feedback to the Bureau." She also refused to enroll in a domestic violence batterer's program, rather than a standard domestic violence education program. Mother completed a 12-step program in February 2023 and, at that time, was attending Alcoholics Anonymous meetings. Between June and October 2023, Mother missed six drug tests and tested negative 15 times. The September 2023 arrest put an end to unsupervised visits, but subsequent supervised visitation went well.

The Bureau recommended termination of reunification services, and the setting of a section 366.26 hearing with the intended permanent plan of legal guardianship with the paternal grandparents (because of the emotional bond between Minor and both parents). The Bureau reasoned, "Despite having services for nearly two years, [Mother] has not been able to take accountability for her behavior. Instead, [Mother] places the blame on others in a verbally aggressive and bullying manner. . . . [The September 2023] arrest highlights the lack of lasting behavioral changes for [Mother] as there are similar issues and factors of this arrest and that in which brought [Minor] into care." The Bureau also observed that the "arrest brought to light

multiple instances of relapses during this case, which she has [not] disclosed to the Bureau, and did not address in treatment or therapy. This arrest has further demonstrated [Mother's] lack of behavioral changes and accountability."

At the December 2023 contested 24-month review, the juvenile court accepted all the reports into evidence and heard brief testimony about Mother's participation in her case plan, visitation, and her relationship with Minor. The Bureau requested termination of reunification services, commenting, "The Bureau has really been dedicated to helping [M]other, to giving [M]other many opportunities to spend time with [Minor]. . . . I don't think there's a question about reasonable services. The fact is in the recent past, things have taken a turn and it is clear [M]other is not in a place where she can care for [Minor] adequately." Minor's counsel agreed, stating, "We've gone back to square one. [Mother is] still abusing substances. She's still fighting with police officers. As the reports show, she is still blaming father for all of these issues . . . ."

Mother's counsel requested that the court return Minor to Mother. She acknowledged Mother had no basis to request continued reunification services, stating, "We would ask—given the posture of the case, we're in a position where we would have to ask for a return at 24 months. I don't know legally how we could ask for more services. We could ask for a continuance and just to further demonstrate that these issues are not currently a problem, but otherwise we would have to ask for a return of [Minor] at this time."[3]

---

[3] It is unclear whether that constituted a formal request for a continuance, but, in any event, Mother does not claim on appeal that the juvenile court erred in failing to continue the 24-month review hearing.

The juvenile court agreed continuation of services was no longer an option, agreeing with Mother's counsel that "the Court has somewhat a binary choice today, either return the children back to [Mother] or terminate services, because we're at the . . . 24-month mark, where [the Court doesn't] have much discretion . . . absent some extraordinary circumstances, which don't exist here." The court observed that the September 2023 arrest was central to the determination whether return would be detrimental. In order to make that assessment, the court watched the police video of the encounter, commenting, "that video depicted [Mother] sitting on the street corner late at night, [she] appears to be cold, and she is not in any condition, from what I could see, to provide care to those children. It's a busy street. There's cars whizzing by. I think it's clear that there are objective signs of intoxication, that she's unable to care for herself, she's unable to care for the children." The court concluded, "I do acknowledge that [Mother's] made some progress. There's times in this record where she makes immense progress, but the recent events are of such gravity and so recent that the Court cannot determine that returning [Minor] to her would be a safe thing to do or, more specifically, I find by clear and convincing evidence that return of [Minor] to [Mother's] physical custody and to that of the father would create substantial risk of detriment to [Minor's] safety, protection and physical and emotional well being."

The court set a section 366.26 hearing for February 15, 2024. The court set Mother's visitation with Minor at two times a month for one hour, supervised.[4]

_____

[4] Mother requested that the Bureau be permitted to allow unsupervised visitation, which the juvenile court did not grant, but Mother did not object to the frequency of visitation.

DISCUSSION

Mother contends the juvenile court erred in not returning Minor to her care. Section 366.25 governs cases in which reunification services have been extended to 24 months. At a 24-month review hearing, a child must be returned to the child's parent or parents, "unless the court finds, by a preponderance of the evidence, that the return of the child to their parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§ 366.25, subd. (a)(1).) If the child is not returned at the 24-month review hearing, the juvenile court must set a section 366.26 hearing. (§ 366.25, subd. (a)(3).) In reviewing the juvenile court's detriment determination, we apply the substantial evidence test. (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1400–1401.)

Mother acknowledges her "relapse" and the September 2023 arrest but asserts that she and Minor "could have been placed in a clean and sober living environment with close monitoring by the Bureau and other professionals." However, Mother cites to nowhere in the record where she requested such a placement, and she cites no authority the court could mandate that arrangement without extending services beyond 24 months. The September 2023 incident occurred during only the second unsupervised, overnight visit that was extended to Mother, the month before the originally scheduled 24-month review hearing. The juvenile court's concern about Minor's safety in Mother's care is supported by the record.

Mother cites to *Rita L. v. Superior Court* (2005) 128 Cal.App.4th 495, which held a juvenile court erred in terminating reunification services where the mother's sole transgression was ingesting a Tylenol with codeine prescribed to her adult daughter while suffering in bed with a headache. (*Id.*

8

at p. 498.)  The court held that the mother's one "dirty" drug test resulting from the incident, when viewed in the context of the entire case, did not constitute substantial evidence that the return of her child presented a substantial risk of detriment.  (*Id.* at p. 505.)  The present case is plainly distinguishable.  The September 2023 incident was a very serious lapse in judgment that put Minor in actual danger, and it occurred during the second unsupervised visit Minor had with Mother.  (Cf. *Rita L.*, at p. 498 [the mother's use of a painkiller "did not indicate [the minor] would have been in any danger even had he been in [the mother's] custody at the time"].)

Mother also contends the juvenile court should have extended reunification services because she received inadequate services from the Bureau.  She argues, "The services of the Bureau were inadequate when the [M]other relapsed.  The Bureau should have worked on placing [Mother and Minor] in a program where the child could be safe, the relapse of [M]other could have been addressed and most importantly the bond between [Mother and Minor] could be sustained."  But Mother cites to nowhere in the record where she argued that she received inadequate services.  In fact, the Bureau pointed out there had been no such claim, and Mother's counsel acknowledged the juvenile court's only options were return or termination of services.  Any claim of inadequate services was forfeited.  (*In re Elijah V.* (2005) 127 Cal.App.4th 576, 582 ["A parent's failure to raise an issue in the juvenile court prevents him or her from presenting the issue to the appellate court."]; see also *In re Kevin S.* (1996) 41 Cal.App.4th 882, 885–886.)

Finally, Mother contends the juvenile court erred in adopting the Bureau's recommendation to set visitation at two times a month.  However, although Mother requested that the Bureau be permitted to allow unsupervised visitation, she did not object below to the frequency of

9

visitation. Any claim the court erred in its visitation order has been forfeited. (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 685–686 [father forfeited claim of error in visitation order]; see also *In re Elijah V.*, *supra*, 127 Cal.App.4th at p. 582; *In re Kevin S.*, *supra*, 41 Cal.App.4th at pp. 885–886.)

## DISPOSITION

The writ petition is denied on the merits. The request for a stay is also denied. Because the section 366.26 hearing is set for February 15, 2024, our decision is final as to this court immediately. (Cal. Rules of Court, rules 8.452(i) & 8.490(b)(2)(A).)

10

SIMONS, J.

WE CONCUR:

JACKSON, P. J.

BURNS, J.

A169432
*Alexia P. v. Superior Court*

11