Filed 7/18/25  S.J. v. Superior Court CA4/2

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| S.J.,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF<br>SAN BERNARDINO COUNTY,<br><br>        Respondent;<br><br>SAN BERNARDINO COUNTY<br>CHILDREN AND FAMILY SERVICES,<br><br>        Real Party in Interest. | E085969<br><br>(Super.Ct.Nos. J297058 &<br> J297059)<br><br>OPINION |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Cara D. Hutson, Judge.  Petition denied.

Denise Adigun for Petitioner.

No appearance for Respondent.

Tom Bunton, County Counsel, and Landon Villavaso, Deputy County Counsel, for Real Party in Interest.

1

## INTRODUCTION

Petitioner S.J. (mother) filed a petition for extraordinary writ pursuant to California Rules of Court, rule 8.452 challenging the juvenile court's order terminating reunification services as to her children, D.J. and L.J. (the children), and setting a Welfare and Institutions Code[1] section 366.26 hearing. She contends: (1) the San Bernardino County Department of Children and Family Services (CFS) failed to ensure she received visitation as part of her reunification services; (2) the court erred in admitting transcripts as evidence after granting her motion for mistrial; and (3) the court erred in finding it would be detrimental to return the children to her care. Mother requests a temporary stay of the section 366.26 hearing, pending the granting or denial of her writ petition. We deny the request for a stay and deny the writ petition.

## PROCEDURAL BACKGROUND

On May 9, 2023, CFS filed a section 300 petition, alleging that the children came within the provisions of subdivisions (a) (serious physical harm), (b) (failure to protect), (d) (sexual abuse), and (j) (abuse of sibling). At that time, L.J. was three years old and D.J. was seven years old. The petition alleged that mother failed to protect the children since she let De.J. (father)[2] physically abuse them. Also, father sexually abused the children's adult sibling, R.J. when she was a

---

[1] All further statutory references will be to the Welfare and Institutions Code, unless otherwise indicated.

[2] Father is not a party to this writ petition.

minor, and mother allowed father access to the children despite knowing of the sexual abuse.

The court held a detention hearing on May 10, 2023. Mother appeared and informed the court that she and father had been married for over 20 years and were living together. The court detained the children in foster care and ordered predisposition services for mother and father (the parents). The court ordered no visitation for the parents, pending evaluation by the Children's Assessment Center (CAC).

*Jurisdiction/Disposition*

On May 23, 2023, the social worker filed a jurisdiction/disposition report.[3] The social worker reported that father denied the allegations of physical and sexual abuse and that mother was in denial about the concerns regarding the alleged sexual abuse. The social worker attached a CAC report which stated that CFS had reported that D.J.'s older sibling disclosed she was abused by father from ages 15 to 18, that father kicked and punched the children, and that mother emotionally abused the children by calling them names. Furthermore, the social worker who accompanied D.J. to the CAC evaluation reported that D.J. disclosed that father would strike him and L.J. with a belt, and mother would hit him and L.J. with her hand.

---

[3] The report included the children's older siblings — Dom.J., A.J., and Don.J. — who are not subjects of this writ petition.

3

On May 31, 2023, the court held a jurisdiction/disposition hearing.  The court granted a continuance, at county counsel's request, to allow for additional discovery.  The court order supervised visitation between the children and the parents, once a week, upon completion of all CAC evaluations.

The court continued the matter again on August 8, 2023 and October 11, 2023.

On August 8, 2023, the social worker filed an addendum report recommending that the court sustain the petition, remove the children from the parents' custody, and bypass their reunification services pursuant to section 361.5, subdivision (b)(6).  The social worker reported the children were currently in the care of the paternal grandmother and were doing well.  The social worker further reported that supervised visitation between the parents and the children began on July 14, 2023, and the parents were observed to be appropriate, and they visited consistently.  The children also had supervised phone calls with them.  The caretaker had concerns with transporting the children from Los Angeles to San Bernardino for visits with the parents, so the parents said they would be willing to travel to a central location, in order to ensure there were no hindrances to the visits.

The social worker reported that she interviewed the children's adult sibling, R.J., on August 6, 2023.  R.J. said father abused her from ages 15 to 17.  She said she had intercourse with him over 200 times, and he had sex with her seven days a

4

week, unless she was on her period.  R.J. said that mother would hide in her bedroom and allow father to do whatever he wanted.  R.J. was very concerned that if the children were returned to the parents' care, they would be subject to sexual abuse.  The social worker reported that the parents continued to deny the sexual abuse.  She further reported that the children were physically abused while in the parents' care, as evidenced by the disclosure of D.J. in his forensic interview and L.J. "having patterned scarring and bruising on her leg suspicious of a grab mark."

On November 3, 2023, the social worker filed an addendum report and stated the parents were referred to predisposition services, and on September 26. 2023, they completed a parenting education program.  Mother's parenting instructor expressed that mother said numerous times she already knew the material, but later became more receptive to the material being taught.  Mother also participated in individual therapy, and the clinician stated that mother was an educated woman who did not appear to be someone who would be unaware of sexual abuse occurring in the home.  The social worker further reported that R.J.'s sister, B.J., acknowledged the parents' abusive behavior and the negative impact it had on all the family members.

As to visitation, the social worker reported that the court initially ordered supervised visits once a week for two hours, beginning on July 14, 2023. However, since then, several visits had been missed for various reasons; thus, the parents agreed to change the schedule to biweekly visits, starting on November 4,

2023. During visits in August 2023, the parents were observed to be well-prepared and engaged.

The social worker continued to recommend no reunification services for the parents, noting they continued to deny all allegations of abuse despite the detailed disclosures of sexual abuse by R.J. Although they had completed parenting education and some individual counseling, the social worker opined that they had not benefitted from the services, as evidenced by their continued denial.

The court held a jurisdiction/disposition hearing on November 14, 2023. County counsel asked to dismiss some of the allegations and find true the remaining allegations, which the court granted. Father was called as a witness and testified that he physically disciplined the children and had used a belt and his hand to hit them. He said he was the main person who used physical discipline on the children, and mother may have "tapped" or "slapped" them with her hand once or twice.

R.J., who was 23 years old, also testified. She said that mother called her names like "whore" and "slut" and that father raped her. She testified that he started sexually abusing her when she was 15, and that they mainly had sex "in the downstairs area in the living room, on the sofa, on the floor." R.J. testified that the first person she told about the sexual abuse was her ex-boyfriend and that she also told mother.

6

Mother testified as well. She testified that R.J. told her father was sexually abusing her, but mother thought she was lying. Mother said she did not think the children were unsafe in her care prior to their removal. She also did not think that she or father posed a risk to them, that she did not see herself ever leaving father, and that she did nothing wrong to warrant the children's removal.

County counsel asked to play an audio recording in court for impeachment purposes, and the court ordered her to provide a transcript prior to the recording being played in court. The audio recording was from a time when law enforcement went to the home and interviewed several individuals, including mother. CFS filed a motion memorandum regarding the impeachment evidence and attached excerpts from the transcript. The court ordered county counsel to provide the transcript of the entire interview, and stated it would listen to the audio recording and highlight the portions where mother appears. The court continued the hearing.

On June 26, 2024, mother's counsel asked to be relieved as counsel because she was retiring. The court held a hearing and mother's counsel asked the court to declare a mistrial, based on her retirement. The court denied the request (without prejudice) as premature, relieved her as counsel, and appointed new counsel. New counsel subsequently asked to be relieved, and the court appointed a third counsel. Mother's third appointed counsel was relieved on July 2, 2024, as mother had retained private counsel. At that hearing, mother's new counsel informed the

court that many visits had been missed due to the caretaker; thus, the court ordered make-up visitation for the visits that were missed, through no fault of the parents.

The court held a hearing on August 16, 2024. Mother's counsel filed a motion for mistrial, based on her coming on board mid-trial. She asked the court to not allow the transcripts from the prior hearings to come in. Mother's counsel specifically argued against allowing the transcripts of the testimonies of mother and R.J. She stated, "And if the Court does allow the transcripts in, I'm going to ask for leave to re-examine [R.J.] and to re-examine Mother." The court stated, "The transcript is in evidence. I'm the trier of fact. I know what has gone on." The court then granted mother's motion and declared a mistrial, and it ruled that the transcripts would come in. The court added that if counsel was concerned with any part of the transcripts, she could call that witness back into court as her witness. The court urged mother's counsel to read the transcripts thoroughly.

On September 16, 2024, the court held another jurisdiction/disposition hearing. County counsel resubmitted the social worker's reports into evidence. With respect to jurisdiction, the parents waived their rights and pled no contest. The parties stipulated to amended allegations, and the court sustained the amended petitions. The amended allegations included that mother failed to protect the children, in that she allowed father to use excessive discipline on them, that R.J. reported she was sexually abused by father multiple times thereby putting the children at similar risk, and that mother knew R.J. reported she was sexually

8

abused by father but continued to allow him access to the children. Regarding disposition, the social worker continued to recommend no reunification services, removal from the parents' custody because there was substantial danger to the health and safety of the children if they were returned home, in that the children or their sibling had been sexually abused and they were at substantial risk of being sexually abused, and that the extent of progress made by mother in alleviating the causes necessitating removal had been insufficient. Mother was in agreement with the proposed findings and orders. Counsel for father and the children also submitted on the proposed findings and orders. The court bypassed reunification services for father under section 361.5, subdivision (b)(6), finding the evidence showed he sexually abused R.J. and physically abused the children. The court declared the children dependents, removed them from the parents' custody, placed them with the paternal grandmother, and ordered reunification services for mother. The court also ordered supervised visitation once a week.

*Eighteen-month Status Review*

The social worker filed an 18-month status review report on October 28, 2024, recommending that services be terminated and a section 366.26 hearing be set. The social worker reported that the court ordered mother to participate in individual counseling, and mother had completed five sessions. Mother acknowledged that her adult daughter said she was sexually abused, and that she (mother) did not report it to law enforcement and placed all her children at risk.

9

The clinician stated that mother had taken responsibility for not protecting the children. Mother said she would ensure the children's safety and protection, and said she and father were no longer together. As to visitation, both mother and the children reported that visits were going well.

The social worker stated that mother had just begun to accept the concerns that led to the children's removal in the past month, and she had not demonstrated her protective capacity for the majority of the case. The social worker also noted that father had only been out of the home for one month; thus, she could not assure that mother would take the steps necessary to keep him out of the home and ensure the safety and well-being of the children. Therefore, the social worker concluded it was not safe to return the children home.

The court held a contested 18-month review hearing on April 16, 2025. County counsel requested to admit into evidence all the social worker's reports written thus far and the transcripts from the previous hearings. Mother's counsel again objected to the admission of the transcripts, but the court overruled the objection and admitted the requested documents. Mother's counsel called the supervisor of mother's visits as a witness. The person who supervised the visits had been friends with mother for 17 years. She said she started supervising visits in June 2024, that mother visited consistently every week unless she (the supervisor) could not make it, and that the children were excited to see mother at the visits.

10

A therapist who had met with mother for nine sessions also testified. The therapist said mother told her she did not physically discipline her children, and she was unaware that father physically disciplined them. Mother also indicated that father had left the home, and she was going to implement a safety plan. The therapist said mother appeared to understand the safety plan to protect the children. On cross-examination, the therapist testified that mother never told her she believed that father sexually abused her children.

One of the social workers who worked on mother's case also testified. She said she did not believe the children could be safely returned to mother's custody at that time because mother did not think she was a part of the abuse; thus, she had not taken responsibility for her part. The social worker opined that mother had not benefitted from her services since acknowledging the existence of abuse was the first step. Furthermore, mother did not believe father posed a risk to the children. The social worker also testified there was reason to believe mother and father remained in a relationship since they were still legally married. She testified that mother had a history of trying to be deceptive. When asked if she believed mother could start having unsupervised visits, the social worker said no because mother did not believe she had any issues or was part of the problem.

Finally, a supervising social worker testified. He testified that mother had been provided with services, starting at the inception of the case; nonetheless, she denied everything. The social worker was concerned with mother not protecting

the children and what mother would do without the court directing her after it closed the case.

After hearing the testimonies and argument from counsel, the court stated it was convinced that mother did not believe any child that said they were abused by father or her. The court acknowledged R.J.'s testimony about being sexually abused, noting that it was legitimate and disturbing. The court then found that mother had failed to make substantive progress in her case plan and reasonable services had been provided. The court found that return of the children to mother would create substantial risk of detriment to their safety, protection or physical/emotional well-being. The court terminated reunification services but found it was not in the children's best interests to terminate parental rights, so it set a section 366.26 hearing, limited to legal guardianship.

<u>DISCUSSION</u>

I. <u>The Court Properly Found That Mother Was Provided With Reasonable</u>

<u>Services, Including Visitation</u>

Mother contends she was not provided with reasonable services since CFS failed to ensure she received visitation. We conclude the record shows she had consistent visitation with the children.

A. *Standard of Review*

"On appeal, it is our task to determine whether the record discloses substantial evidence which supports the juvenile court's finding that reasonable

services designed to aid the parent in overcoming the problems which led to loss of custody were provided or offered." (*In re Joanna Y.* (1992) 8 Cal.App.4th 433, 439.) "In reviewing the reasonableness of the services provided, this court must view the evidence in a light most favorable to the respondent. We must indulge in all legitimate and reasonable inferences to uphold the verdict. If there is substantial evidence supporting the judgment, our duty ends and the judgment must not be disturbed." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545.)

B. *Mother Had Consistent Visitation*

Mother contends she was not provided with reasonable services since CFS failed to comply with the court's visitation order. She complains that the caregiver interfered with the visits, and CFS placed the children in an out-of-county location. However, mother then states that her visitation with the children "was regular and appropriate, except for the interference and lack of cooperation by the caretaker."

Mother correctly states that her visits were "regular and appropriate." The record shows the court ordered supervised visitation once a week and visits began on July 14, 2023. Mother visited consistently and was observed to be appropriate. The children also had supervised phone calls with her. Although the record does indicate some visits were missed due to the children's activities or the caretaker being unable to accommodate the visits, the record shows the court ordered make-up visits for the ones that were missed. Moreover, when the caretaker raised

13

concerns about transporting the children long distances to visits, mother said she would be willing to travel to a central location in order to ensure there were no hindrances to the visits. The record also shows that when weekly visits were being missed, mother agreed to change the schedule to biweekly visits. Further, at the 18-month review hearing, mother testified that she had visits with the children and that some of the missed visits were made up.

Thus, the record shows that mother had consistent visitation with the children, and substantial evidence supports the court's finding that reasonable services were provided in this regard.

II. <u>Mother has Waived Objection to the Admission of the Transcripts</u>

Mother contends the court erred in admitting transcripts as evidence, after granting her motion for mistrial. She argues that, since her new counsel was coming on board mid-trial, counsel needed to be able "to observe if a witness is acting strange . . . or doing any actions that may indicate the witness is not being truthful when answering some questions." Mother argues that "[f]orcing counsel to rely on previous testimony garnered by previous counsel . . . is definitely a violation of mother's due process and concerns of incompetent counsel." Finally, mother claims that the proper ruling "would be for the court to grant the Motion for Mistrial AND exclude the transcripts, the only way to ensure equity of the proceedings." We conclude that the claim has been waived.

14

We initially note that this case is currently before the court on a petition for extraordinary writ pursuant to California Rules of Court, rule 8.452 challenging the juvenile court's order terminating reunification services as to her and setting a Welfare and Institutions Code section 366.26 hearing. The admission of the transcripts which mother claims was error occurred at the combined jurisdictional and dispositional hearing.

The dispositional order is the first appealable order in a dependency case. (*In re Athena P.* (2002) 103 Cal.App.4th 617, 624.) "[A]ny challenge to the jurisdictional findings [or in the proceedings leading to those findings, including the admissibility of evidence] would have to be raised in an appeal from the dispositional order. [citation] Failure to appeal from an appealable dispositional order waives any substantive challenge to the jurisdictional findings." (*Ibid.*) Thus, mother may not now appeal the admissibility of transcripts occurring at the combined jurisdictional and dispositional hearing.

III. The Court Properly Found That Return of the Children to Mother Would Create a Substantial Risk of Detriment

Mother argues there was insufficient evidence of a substantial risk of detriment to the children if returned to her custody, at the 18-month hearing. We disagree.

15

A. *Relevant Law*

Section 366.22, subdivision (a) provides, in relevant part: "After considering the admissible and relevant evidence, the court shall order the return of the child to the physical custody of his or her parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. The social worker shall have the burden of establishing that detriment."

This court views the record to determine whether substantial evidence supports the court's finding that the children would be at substantial risk of detriment if returned to mother's custody. (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1400-1401 (*Yvonne W)*.) "In so doing, we consider the evidence favorably to the prevailing party and resolve all conflicts in support of the trial court's order." (*Id*. at p. 1401.) "In the presence of substantial evidence, appellate justices are without the power to reweigh conflicting evidence and alter a dependency court determination." (*Constance K. v. Superior Court* (1998) 61 Cal.App.4th 689, 705.)

B. *The Evidence Was Sufficient*

In the instant case, there was substantial evidence of the risk of requisite detriment if the children were returned to mother. The evidence showed that she did not properly protect the children when they were in her custody. The court

16

found true the allegations that mother failed to protect them in that she allowed father to use excessive discipline on them, she knew R.J. reported that father sexually abused her multiple times and continued to allow him access to the children, and the children were at similar risk of sexual abuse. Although mother completed a parenting program and participated in therapy, the evidence showed she did not benefit from it. "[S]imply complying with the reunification plan by attending the required therapy sessions and visiting the children is to be considered by the court; but it is not determinative. The court must also consider the parents' progress and their capacity to meet the objectives of the plan; otherwise the reasons for removing the children out-of-home will not have been ameliorated." (*In re Dustin R.* (1997) 54 Cal.App.4th 1131, 1143.) Mother denied the sexual abuse throughout the case. However, the evidence showed that R.J. was sexually abused by father over 200 times over several years, and R.J. said mother would hide in her bedroom and allow father to do whatever he wanted.

Notably, at the November 14, 2023 jurisdiction/disposition hearing, mother testified R.J. told her that father was sexually abusing her, and mother thought she was lying. Mother said she did not think the children were unsafe in her care prior to their removal or that father posed a risk to them. She also said she did not see herself ever leaving him and that she did nothing wrong. By the time of the 18-month review hearing, mother merely acknowledged that R.J. *said* she was sexually abused. Moreover, the therapist testified that mother never told her she

17

believed father sexually abused her children. Additionally, one of mother's social workers testified that she did not believe the children could be safely returned to mother's custody at that time because mother did not think she was a part of the abuse and had not taken any responsibility. The supervising social worker also testified and said that mother had received services since the inception of the case, yet she still denied everything. The supervising social worker was similarly concerned with mother not protecting the children if returned home.

Ultimately, the record supports the court's finding that mother did not believe any of her children had been abused by father. Accordingly, the court could reasonably assume she would not be protective of the children. Thus, we conclude that substantial evidence supports the court's finding that the children would be at substantial risk of detriment if returned to her custody.

18

## DISPOSITION

The writ petition is denied.  The request for a temporary stay of the section

366.26 hearing is also denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
J.

We concur:

MILLER _____
Acting P. J.

MENETREZ _____
J.

19