Filed 2/19/26  In re Amanda A. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re AMANDA A., a Person Coming Under the Juvenile Court Law. | D086990 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. NJ15973) |
| v. | |
| ARMANDO T., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Alejandro Morales, Judge.  Affirmed.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

David J. Smith, Acting County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Natasha C. Edwards, Deputy County Counsel, for Plaintiff and Respondent.

This is the third appeal filed by Armando T. (Father) in this dependency action involving 11-year-old Amanda A. He contends no substantial evidence supports the juvenile court's finding at the contested 18-month permanency hearing that returning Amanda to Mother's physical custody would not "create a substantial risk of detriment" to Amanda's "safety, protection, or physical or emotional well-being." (Welf. & Inst. Code, § 366.22(a)(1).) Resolving this appeal by memorandum opinion (*People v. Garcia* (2002) 97 Cal.App.4th 847, 851–854), we conclude substantial evidence supports the court's no detriment finding. We thus affirm its September 25, 2025 order.

## I.

## A.

In November 2023, the San Diego County Health and Human Services Agency filed a petition under section 300(d). The petition alleged (1) Amanda's stepfather had sexually abused her and (2) Mother had failed to protect her. We affirmed the juvenile court's dispositional order keeping Amanda in out-of-home care, rather than placing her with Father in Ohio. (*In re Amanda A.* (Sept. 20, 2024, D084041) [nonpub. opn.].)

At the 12-month contested review hearing, the juvenile court found it was not in Amanda's best interest, and would be detrimental to her emotional well-being, if placed with Father in Ohio. Like the juvenile court, we commended Father's efforts to develop a relationship with Amanda, but found substantial evidence supported the court's order. (*In re Amanda A.* (Nov. 24, 2025, D086049) [nonpub. opn.].)

## B.

In recommending Amanda be returned to Mother, the Agency noted Mother has made "significant behavioral changes" since the 12-month review

hearing. These included: (1) stopping all business dealings with the stepfather, her former business partner; (2) having third parties supervise visits between the stepfather and their son and using only the "[T]alking [P]arents application" to schedule those visits and arrange exchanges; (3) confronting the stepfather's family about his sexual abuse of Amanda; (4) participating (i) in dozens of child sexual abuse therapy classes, where she completed a written safety plan and wrote a letter of apology to Amanda, and (ii) in court-ordered conjoint therapy with Amanda, which helped her identify her past "mistakes" and make "necessary changes" to become more protective of Amanda; (5) rearranging the furniture in her home and buying Amanda new bedroom furniture, so the home would feel and look different for Amanda when back in her care; and (6) enrolling Amanda in boxing and self-defense classes, with the expectation Amanda would "feel more comfortable in her body and have the confidence in herself to fight back."

At the contested 18-month permanency hearing, the juvenile court found there would not be a substantial risk of detriment to return Amanda to Mother. According to the court: (1) the conjoint therapy it ordered for Mother and Amanda was a "huge step" forward in their relationship, as it allowed them to openly discuss their feelings and emotions and "clear the air"; (2) Mother "has demonstrated and is willing to ensure and account for Amanda's well-being and safety and how [Amanda] feels emotionally"; (3) Amanda's 60-day trial visit with Mother (and stepbrother) was "going well," with no concerns reported; and (4) Amanda was a "bright girl" who has "demonstrated to everybody" that she knows how to protect herself, including calling 911 if she came in contact with the stepfather. The court thus returned Amanda to Mother's physical custody and ordered family maintenance services to Mother and enhancement services to Father.

3

## II.

### A.

Father contends substantial evidence does not support the juvenile court's no detriment finding. We disagree.

During the reunification phase of dependency, the juvenile court typically holds a hearing at six-month intervals to evaluate the adequacy of the services offered to, and the progress of, the parent. (*Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 625.) At the 18-month hearing, "the court shall order the return of the child to the physical custody of their parent . . . unless the court finds, by a preponderance of the evidence, that the return of the child to their parent . . . would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§ 366.22(a)(1).) The Agency has the burden of establishing detriment. (See *ibid.*) "In evaluating detriment, the juvenile court must consider the extent to which the parent participated in reunification services" and "the efforts or progress the parent has made toward eliminating the conditions that led to the child's out-of-home placement." (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1400.)

We review the juvenile court's no detriment finding for substantial evidence, viewing the evidence in the light most favorable to the court's order and drawing every reasonable inference and resolving all conflicts in its favor. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.) If two or more inferences can reasonably be deduced from the evidence, we cannot substitute our decision for the trier of fact's. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 319.) Instead, we must affirm the order if supported by substantial evidence, even if it could support a contrary finding. (*Id.* at p. 318.)

We conclude substantial evidence supports the juvenile court's finding that Amanda could be safely returned to Mother's physical custody. The court found that after the 12-month review hearing, Mother, "to her credit," took the necessary "steps" to become more protective of Amanda, alleviating the concern that led to the dependency. The record supports this finding: Mother began communicating with the stepfather only through the Talking Parents application; she stopped supervising visits between him and their son; she arranged for third parties to pick up and drop off their son based on a visitation schedule she created; she no longer had any business dealings with the stepfather; and she recognized the stepfather needed to be "held accountable for his actions." Mother thus gained insight into how her prior relationship with the stepfather had negatively impacted Amanda's emotional and mental well-being, as Mother herself recognized when she told the Agency: "'I know that I made a mistake and I am responsible for my actions, my job is now to take care of my kids and that they are safe.'"

The record also shows Amanda reported (1) being "happy" back home with Mother and her stepbrother and "excited" about "learning how to protect herself"; and (2) having no anxiety in Mother's care, once she settled into a routine. Amanda also no longer worried about the stepfather, stating she would call 911 if she saw him and that Mother would protect her. Amanda's therapist also reported that Amanda was "excited and happy" to return to Mother's care. And the Agency reported the 60-day trial visit was going well with no concerns reported.

Accordingly, we conclude substantial evidence supports the juvenile court's finding that returning Amanda to Mother's physical custody would not "create a substantial risk of detriment" to Amanda's "safety, protection, or physical or emotional well-being." (§ 366.22(a)(1).)

B.

Father argues "it was detrimental to place" Amanda with Mother because Mother (1) still has a relationship with the stepfather and (2) would fail to protect Amanda again. We are not persuaded.

Father's contention is simply a request for us to reweigh the evidence and make new findings, despite the substantial evidence discussed earlier that supports the juvenile court's no detriment finding. This we cannot do. (See *In re Stephanie M.*, 7 Cal.4th at p. 318; *In re L.Y.L.*, 101 Cal.App.4th at p. 947.)

Father's contention that Mother will fail to protect Amanda in the future from the stepfather is also speculative. "Speculation" however "is not evidence." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 864.) "Neither does it even support an inference implying as much." (*Id.* at p. 865.)

More importantly, the juvenile court addressed the safety issue at the permanency hearing, finding Mother has come "a long ways" since the 12-month review hearing by becoming more protective of Amanda's physical and emotional well-being. This included her using only the Talking Parents application to exchange information with the stepfather and making arrangements with various third parties to pick up and drop off their son to avoid any direct or indirect contact between her and the stepfather or between the stepfather and Amanda.

C.

Father alternatively contends it was in Amanda's "best interest" to be *placed* with him in Ohio. But at the 18-month permanency hearing, that is not the standard used by the juvenile court. Instead, "[s]ection 366.22, subdivision (a), . . . contains a statutory presumption the child will be *returned* to parental custody unless the court finds the child's *return* would

6

create 'a substantial risk of detriment'" to the child's well-being. (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 311, italics added.)

In any event, substantial evidence supports the finding it was not in Amanda's "best interest" to be placed with Father in Ohio. Amanda was adamant she did not want a relationship with Father and did not want to live in Ohio, including when she addressed the juvenile court at the contested 18-month hearing. Amanda reported having suicidal ideation in 2024, in part due to "stress[]" "when [Father] pressure[d] her to connect." The Agency recommended against placement with Father, noting he and Amanda needed to work on their relationship and Amanda had no family or "support system" in Ohio. Even so, we continue to commend Father's efforts to address his relationship with Amanda and encourage him to take full advantage of the enhancement services the juvenile court ordered for him.

III.

We affirm the juvenile court's September 25, 2025 order.

CASTILLO, J.

WE CONCUR:

McCONNELL, P. J.

BUCHANAN, J.

7